372 So.2d 573 (1979)
Elmer Neal HARDY, Sr., Plaintiff-Appellee,
v.
A. C. BROWN, Defendant-Appellant.
No. 13862.
Court of Appeal of Louisiana, Second Circuit.
January 12, 1979.
Kitchens, Benton, Kitchens, Pearce & Elkins by Marshall R. Pearce, Minden, for defendant-appellant.
*574 Robinson & Smith by C. Wayne Smith, Homer, for plaintiff-appellee.
Before PRICE, MARVIN and JONES, JJ.
PRICE, Judge.
Plaintiff brought this action to establish the boundary between land owned by him and defendant situated in the SW ¼ of the NE ¼ of Section 25, Twp. 22 N, R 6 W, in Claiborne Parish, Louisiana. The chain of title of each party was derived from a common ancestor who conveyed to plaintiff's predecessors in title that part of the subject quarter section lying west of the Rocky Spring Road and conveyed to defendant's predecessors in title that part of the quarter section lying east of this road. As the deeds originating these chains of title were in 1869 and 1872, the question at issue is the precise location of the Rocky Spring Road[1] during those years. As shown on the map of a survey made by Roy B. Morgan in 1949, there are two abandoned roadbeds running through the SW ¼ of the NE ¼ with approximately eight acres of land lying in between, and ownership of this acreage depends on which of the abandoned roadbeds was the Rocky Spring Road in 1869-1872.
The trial court found the abandoned easterly roadbed as reflected on the map prepared by Morgan to be the location of the original Rocky Spring Road and declared it to be the boundary between the two estates. We affirm the trial court judgment for the reasons assigned herein.[2]
Plaintiff contends that prior to 1885, the east roadbed was the Rocky Spring Road and that its location was moved further to the west during this year to avoid an extremely low area which made use of the road difficult during wet weather.
Defendant, on the other hand, contends the east roadbed was never anything but a private road providing access to the house of a neighbor on property north of defendant's land, and that the west roadbed had always been the location of the Rocky Spring Road until it was moved to its present location some time after 1900.
The trial court's reasons for accepting plaintiff's position are in pertinent part as follows:
Because there was no one alive with firsthand knowledge as to the location of the original Rocky Spring Road, this Court relies in part on affidavits executed on October 20, 1949, by W. A. Williams (78 years of age) and Tom J. Richardson (83 years of age) dealing specifically with that question. These affidavits identify the East Road as the Rocky Spring Road.
The Court also is impressed by the affidavit of the defendant, A. C. Brown, given on December 6, 1949, in which he admitted the possession of plaintiff and stated:
"This line (East Road) is recognized by both parties." (Exhibit "G").
This statement was made after the survey (P-6) and clearly related thereto, as evidenced by the testimony of Mr. Jimmy W. Carter (Page 68, 71, 72, 76, and 86). Mr. Carter testified that the defendant:
".... showed us corners where to start," (See Exhibit "A", the proces verbal of survey.)
and indicated his lands to be east of the East Road. This statement was given in conjunction with title work involving the subject tracts for the express purpose of determining the ownership (both tracts were leased on the basis of this curative work) and was certainly given at an "innocent" time. Although the defendant denies having been present during the survey, the foregoing testimony and that of his son, David Brown, clearly establishes the contrary.
* * * * * *

*575 The Court made an on-site inspection of both roads, walking the full distance of each, in the presence of the defendant's attorney, his son, David Brown, and the plaintiff. There is no question in this Court's mind that these two roads existed at one time, that erosion in the East Road was many times more significant than in the West Road and that the evidence of timber or timber remains therein identified the East Road as the older of the two roads.
The Court was impressed with the testimony of Mr. Holsey White, a black man aged 76 years and lifelong resident of the area, who identifies the East Road as the Rocky Spring Road and testifies firmly that plaintiff owned and farmed the land on the west side, whereas the defendant owned the land on the east side of the East Road. He testified further that he had never seen the defendant farm any land on the west side and that he never heard of any claim by the Browns to those lands. He testifies that when he was a little boy he traveled the East Road, known in the community as the Rocky Spring Road.
The Court was not impressed with the testimony of Mr. Napoleon Battle and the testimony of Mrs. A. C. Brown was confused.
Defendant asserts numerous specific assignments of error to the findings of the trial court. The principal complaints are that the court relied on affidavits of persons now deceased along with other inadmissible evidence and gave improper weight to a personal inspection of the sites of the two roadbeds rather than basing its decision on strong inferences that could be drawn from an examination of the public records as to the location of the subject road.
Defendant contends from an examination of the description in other contemporary deeds of record concerning lands in an adjoining quarter section in which the Rocky Spring Road was referred to as a boundary, it can logically be determined that the west roadbed as shown on the survey has always been the location of the Rocky Spring Road. For example, defendant refers to the conveyance in 1869 from James T. Fortson to Joseph Richardson by the description "NW ¼ of the SE ¼ of Section 25, lying west of the Rocky Spring Road." This quarter section lies adjacent to the subject quarter section on the south. Defendant contends that as the map prepared by Morgan shows no part of the easterly abandoned roadbed in the NW ¼ of the SE ¼ of Section 25, and as the conveyance from Fortson to Richardson was prior to the date plaintiff contends the road was moved (1885 or 1886) then the reference to the Rocky Spring Road in the description in that conveyance illustrates that the road at that time must have been the westerly road which the Morgan survey shows running through the NW ¼ of the SE ¼ This argument, although persuasive, does not outweigh the evidence relied on by the trial judge. The survey shows the east roadbed running northwesterly through the NE ¼ of the SE ¼, and as it approaches the north line of the quarter section, it traverses the common line between the NW and NE quarters of the SE ¼ and swings altogether into the subject SW ¼ of the NE ¼.
It is therefore logical that in 1869, without the benefit of maps showing the exact relationship of the road to established governmental corners, the act of conveyance was prepared under a reasonable belief that this easterly roadbed was partially in the NW ¼ of the SW ¼.
This conclusion is supported by the description contained in two other deeds from Fortson in 1874, in which he conveyed by reference to the Rocky Spring Road, but did not attempt to place the road in either the NW ¼ or NE ¼ of the SE ¼, but rather conveyed by reference to that portion of the N½ of the SE ¼ lying East of the Rocky Spring Road in a deed to H. W. Minfee, and that portion of the N ½ of the SE ¼ lying West of the Rocky Spring Road in the conveyance to James Brown. The failure to designate the specific quarter section could logically show an uncertainty on the part of the vendor as to the location of the road to the governmental quarter section line. We *576 do not therefore find the trial court was in error in relying on other evidence to fix the location of the road.
Defendant contends the trial court erred in admitting into evidence and relying on affidavits executed by W. A. Williams and Tom J. Richardson in 1949. Both of these persons were dead at the time of trial and defendant objected to the admissibility of the affidavits contending this was hearsay evidence.
Plaintiff admits the affidavits are hearsay, but contends they were properly admitted under an exception to the hearsay evidence rule as traditional or reputation evidence of ancient boundaries.
While we are unaware of any Louisiana jurisprudence upholding this exception to the hearsay rule, we find in the great majority of states reputation or traditional evidence is regularly admitted on questions of the private boundaries. McCormick, Evidence § 324 (2d ed. 1972), 12 Am.Jur.2d verbo, "Boundaries," § 106-110. Moreover, the federal courts recognize the admissibility of reputation evidence to prove private boundaries as an exception to the hearsay rule provided the reputation antedates the controversy. See Fed.Rules Evid. 803(20).
According to 1 Conrad, Modern Trial Evidence, § 314, the foundation for admissibility of such evidence requires:
In the first place, present day reputation as to these matters is not competent. Another way of stating the rule is to assert that the only tradition or reputation evidence admissible to establish a fact or matter permissible under this section is that of a past, not living generation.
Secondly, proof under this exception is limited to declarations of persons who are since deceased, supposed to be dead, or unavailable as witnesses.
Thirdly, the declarants, under the circumstances, must be presumed to have knowledge of the facts upon which the declarations were founded or it must be shown that the declarants actually had adequate knowledge of the facts stated or were in a position to know such facts.
Finally, the declarations must be ante litem motam, that is, before the controversy in question arose, so that the declarant has no motive to make a false assertion.
Williams and Richardson were respectively 78 and 83 years of age in 1949 when their affidavits were taken by Jimmy W. Carter, an employee of T. L. James, Co., who held mineral leases on the lands of plaintiff and defendant. There had been no dispute between the parties at this time over boundaries and the T. L. James Company took the affidavits and had a survey made to clarify the total acreage owned by each landowner following a title examination. Neither of the affiants had any interest in the matter and were not aware of any dispute between plaintiff and defendant. They were apparently the oldest persons in the community having knowledge of the original location of the Rocky Spring Road. Their affidavits given in 1949 meet all of the requirements set forth above for admissibility of tradition evidence. The admissibility of this evidence also is consistent with the view that prerequisites for an exception to the hearsay rule are necessity and circumstantial guaranty of trustworthiness.
A general lack of other reliable sources of information provides the necessity. The guaranty of trustworthiness is provided by restricting the use of reputation evidence to those subjects in regard to which individuals with personal knowledge are likely to have disclosed facts which have been subjected to prolonged observation and discussion by the community. Under such circumstances, it is unlikely that a falsehood could become generally accepted in a community as the truth. McCormick, Evidence § 324 (2d ed. 1972).
We therefore find the trial court properly admitted the affidavits under a well recognized exception to the hearsay rule.
We further find the proces verbal of the surveyor, Roy B. Morgan, and the abstracts of title and title opinion procured by T. L. James during its title investigation in 1949 are admissible under the guidelines of *577 necessity and reliability set forth in Dallas County v. Commercial Union Assurance Co., 286 F.2d 388 (5th Cir. 1961).
Defendant also contends the trial court erred in misconstruing an affidavit signed by defendant, A. C. Brown, in 1949 during the survey and title activities of T. L. James in which defendant declared plaintiff's father, and ancestor in title, had peacefully possessed property lying to the west of the Rocky Spring Road. Conceding that defendant did not intend to make such an admission in the affidavit, there is sufficient evidence otherwise in the record to support the trial judge's finding that the plaintiff or his family possessed the land lying between the two abandoned roadbeds for a period of approximately fifty years prior to the filing of this action without any protest being made by defendant. La.C.C. Art. 794 provides:
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.
Defendant lastly contends the trial court was unduly influenced by a personal inspection of the two abandoned roadbeds in resolving which was the original Rocky Spring Road. Such a physical inspection is certainly within the discretionary authority of the trial court, and it is apparent from the court's reasons for judgment that the only observations which influenced the court were the factors of erosion suggesting the comparative age of each roadbed. The visual inspection was apparently weighed along with the other evidence by the court in making its determination that the east roadbed was the original Rocky Spring Road, and it does not appear that the inspection was given improper weight.
For the foregoing reasons, the judgment is affirmed at appellant's cost.
NOTES
[1] Although plaintiff's immediate deed of acquisition describes his eastern boundary as the Rocky Spring Road and defendant's deed refers to his western boundary as the Colquitt-Lisbon Road, it is stipulated that these were one and the same road.
[2] See our earlier remand of this case at 345 So.2d 971 (La.App.2d Cir. 1977).