568 So.2d 155 (1990)
Donald ELLIOTT, Plaintiff/Appellee,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, et al., Defendant/Appellant.
No. 21771-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*156 Bennie Mac Farrar, Monroe, for plaintiff/appellee.
Theus, Grisham, Davis & Leigh by Charles H. Heck, Monroe, for defendant/appellant.
Before MARVIN, FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
Defendants, James Crews and his insurer, United States Fidelity & Guaranty Company (USF & G), appealed the judgment of the trial court in favor of plaintiff, Donald Elliott, in plaintiff's action for personal injury damages sustained in a collision between Crews' automobile and plaintiff's motorcycle.
Defendants assert the following assignments of error:
1) The trial court erred in failing to find plaintiff contributorily negligent so as to totally bar his recovery;
2) The trial court erred in finding defendant negligent;
3) The trial court erred in electing after trial to visit the accident site to perform tests, measurements and make visual observations without the knowledge, consent or presence of the attorneys and to rely upon those tests and observations in deciding the case;
4) The trial court erred in awarding excessive damages;
5) The trial court erred in permitting testimony at trial as to the issuance of a traffic ticket without proof or indication of a plea of guilty to or conviction of any traffic offense;
6) The trial court erred in utilizing judicial notice to resolve a disputed issue of fact;
7) The trial court erred in failing to apply the principle falsus in uno, falsus in omnibus to plaintiff's testimony; and,
8) The trial court erred in failing to find the accident occurred outside plaintiff's proper lane of travel, thus raising a presumption of fault on his part.

Factual Context
On June 29, 1979 plaintiff was riding his KZ 900 Kawasaki motorcycle in a westerly direction on Park Avenue in Monroe. Defendant, *157 Crews, and his passenger, Deborah Lewis, were proceeding south on North 12th Street in a 1979 Cadillac. At the intersection of those two streets, Crews allegedly came to a stop at the stop sign, looked both ways, determined the intersection was clear and started across. Plaintiffs motorcycle struck Crews' Cadillac behind its rear wheel with the force of the collision causing plaintiff to be thrown off the motorcycle, over the back of the car and onto the pavement.
On June 4, 1980 plaintiff filed this action for personal injury damages naming as defendants, Crews and his insurer, USF & G. Plaintiff alleged that Crews had attempted to cross Park Avenue in front of him without any warning whatsoever, so that he was unable to avoid hitting the Cadillac. Plaintiff alleged that Crews' negligence was the sole cause of the collision and, that as a result of the accident, he suffered the total loss of his motorcycle and loss of income. He also sustained serious injuries causing him severe pain and mental anguish, which required several hospitalizations. Future surgery is a possibility. Plaintiff further alleged that as a result of his injuries he was no longer able to seek the same employment he was seeking at the time of the accident.
In their general denial answer, defendants denied the accident was the result of any act of neglect on the part of Crews. Alternatively, defendants affirmatively asserted that plaintiff was contributorily negligent, sufficient to totally bar recovery by him, in that he was operating his motorcycle in a reckless and careless manner, failed to have and maintain a proper lookout, was speeding and failed to avoid the accident despite ample time and opportunity to do so.
At the trial on the merits, the testimony of plaintiff differed from that of Crews, Lewis and two disinterested witnesses. Although plaintiff admitted his motorcycle was capable of speeds in excess of 100 miles per hour, he testified that he was traveling approximately 30-35 miles per hour on his way home from work when he approached and passed a jeep which was traveling about id miles per hour. Approximately one and one-half miles down the road plaintiff approached the intersection of North 12th street, his view of which was partially obstructed by tall thick hedges. Plaintiff first viewed Crews' vehicle crossing the intersection when it was approximately 20-30 feet away. Plaintiff stated he did not have enough time to put on his brakes or to take any type of evasive action. Plaintiff estimated the point of impact to be somewhere between the center of his own lane and the center line. Plaintiff testified that as a result of the accident he experienced severe difficulties with his knee which required surgery. Plaintiff admitted he had injured his knee in another motorcycle accident in 1974 but denied any long-term difficulties from this injury.
The testimony of Crews and Lewis was that Crews came to a complete stop at the intersection, looked both ways and determined that the intersection was clear prior to pulling out. However, their view to the east was limited to 150 feet due to a curve in Park Avenue. When the Cadillac was well into the intersection, both front wheels having entered the swell on the other side of the road, Crews and Lewis saw the motorcycle approaching. They characterized their observation of plaintiff as "just like a flash" and stated he was traveling at a high rate of speed. The force of the collision turned Crews' car around nearly 90 degrees in the roadway. Minutes later the Monroe city police arrived and gave Crews a citation for failure to yield.
Two disinterested witnesses, George Carso and Bart Ackel, were also traveling in a westerly direction on Park Avenue in a jeep at approximately 30-35 miles per hour when they were passed by plaintiff. The witnesses testified they were familiar with motorcycles and that plaintiff was traveling at a rate of speed which they estimated to be approximately 90-100 miles per hour. After being passed by plaintiff, the witnesses observed him having to swerve around to "just miss" a garbage truck after the garbage truck pulled out of an intersecting street, Pargoud, onto Park Avenue. The garbage truck obscured the witnesses' vision of plaintiff momentarily until *158 they rounded a curve in the road and observed the accident site.
In written reasons for judgment filed on June 10, 1986 the trial court found in favor of plaintiff and awarded him $48,174.55 in damages. The trial court held that Crews was negligent in failing to see what he should have seen and in failing to yield the right-of-way at a stop sign. Although the trial court accepted the testimony of Carso and Ackel regarding plaintiff's excessive speed at the time he passed their jeep, based upon calculations which the trial court made when it visited the scene of the accident after trial, the court concluded that at the time of the accident plaintiff was "more than likely traveling at a reasonable speed".
We note, first, that the trial court was in error in visiting the accident site to perform tests, measurements and make visual observations without the knowledge, consent or presence of the attorneys and to rely upon these tests and observations in deciding the case. Any factual insight purportedly gained through these observations and calculations are not the type of facts of which judicial notice may be taken.
Disputed facts are not in the same vein as the laws of nature, geographic and historical facts, time, laws and other matters of common knowledge. The resolution of disputed issues of material fact by judicial notice is improper. Pierce v. Board of Supervisors of Louisiana State University, 392 So.2d 460 (La.App. 1st Cir. 1979). Further, absolutely no foundation was laid for this evidence. The proper foundation for admitting results of experiments of this type is to show that the tests were conducted under conditions similar to those prevailing at the time of the accident. Guidry v. Boston Old Colony Insurance Company, 540 So.2d 543 (La.App. 3d Cir. 1989), writ denied, 543 So.2d 7 (La.1989). Expert tests based upon assumptions not proven or upon variable factors not established are of no value. Baham v. Patterson, 353 So.2d 366 (La.App. 1st Cir.1977). Judicial notice is a substitute for and an equivalent of evidence and facts should not be noticed unless otherwise admissible. Dimm v. Cramer, 284 So.2d 850 (La.App. 4th Cir.1973).
Neither this court nor the parties or attorneys involved has any idea what type of tests were performed by the trial court. It is difficult to imagine that the court had the opportunity to experience or witness a 100 mile per hour approach to the point of impact; or to determine the forces necessary to rotate a Cadillac 90 degrees; or to deduce the point of impact on the roadway from physical observations at the scene; or to resolve the problems confronting or the reactions of a speeding motorcyclist when a garbage truck pulls into his path. Without the insight allegedly gained by the trial court from these experiments, the evidence of record simply establishes no factual basis for the conclusions reached by the trial court.
Defendants specify that the trial court committed manifest error in holding Crews guilty of negligence and in failing to find plaintiff guilty of contributory negligence. In support, they rely on the consistency of the defense witnesses' testimony and the physical evidence regarding the facts of the accident and the general implausibility of plaintiff's version of the facts.
While we recognize that the trial court's factual findings and credibility determinations are due great weight, we are not required to accept its unreasoned and unreasonable conclusions as to either. Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2d Cir.1983), writ denied, 443 So.2d 586 (La.1983). In Louisiana, courts of appeal have a duty to fully and completely review not only the law applied by trial courts but also the factual determinations made therein. La.Const. Article 5 § 10; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The supreme court has recently reiterated that a reviewing court may overturn a factual finding grounded on a credibility call if the objective evidence so contradicts the witnesses' story or the story itself is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it. However, in the absence of such factors, a finding of fact based on the fact-finder's decision to believe the testimony *159 of one of two or more witnesses can virtually never be clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989); Duncan v. State Department of Transportation and Development, 556 So.2d 881 (La.App. 2d Cir.1990).
The evidence of record makes it clear that Crews was proceeding across Park Avenue at a normal rate of speed. Crews, Lewis and the two disinterested witnesses, Carso and Ackel, testified the Cadillac was entirely out of plaintiff's proper lane with the point of impact actually in the eastbound lane. Defendants contend the accident occurred due to plaintiff having swerved out of his own lane to avoid colliding with the garbage truck and failing to re-enter his proper lane of travel. Defendants further maintain plaintiff was traveling at an excessive rate of speed; otherwise, Crews and/or Lewis would have seen him prior to entering the intersection. Defendants argue that if plaintiff were traveling at a safe rate of speed he would have been able to stop or swerve to avoid the collision.
Initially, we reject defendants' contention that the principle of "falsus in uno, falsus in omnibus" should have been applied by the trial court so as to discredit plaintiff's entire testimony. Although we disagree with the trial court's evaluation of plaintiff's testimony, it would have been improper to discredit it entirely because relevant statements made by him were corroborated by other credible evidence. The maxim "falsus in uno, falsus in omnibus" is a harsh and unrealistic rule which should be applied only with extreme caution. Bennett v. U.S. Fidelity and Guaranty Company, 373 So.2d 1362 (La.App. 1st Cir. 1979); Stewart v. Allstate Insurance Company, 285 So.2d 556 (La.App. 1st Cir.1973).
However, we find merit in defendants' argument that the trial court erroneously determined that plaintiff carried his burden of proving fault on the part of Crews, particularly that the accident occurred within plaintiff's proper lane of travel. Although Crews had a statutory obligation to yield the right-of-way to plaintiff, who was traveling on the favored roadaway, his failure to do so does not give rise to a presumption of negligence. La. R.S. 32:123; See Cloney v. Smith, 441 So.2d 342 (La.App. 5th Cir.1983), writ denied, 444 So.2d 608 (La.1984); Camet v. Guillot, 291 So.2d 438 (La.App. 4th Cir. 1974). Thus, plaintiff had the burden of proving that Crews' negligence was the legal and proximate cause of the collision. No physical facts or witnesses were offered to prove plaintiff's claim that Crews failed to stop at the intersection, that he failed to see what he should have seen or that the point the motorcycle collided with the Cadillac occurred within plaintiff's proper lane of travel. See Miller v. Lowry, 409 So.2d 1252 (La.App. 2d Cir.1982). On the contrary, the point of impact indicated by Crews, Lewis, Carso and Ackel placed plaintiff across the centerline, actually giving rise to a presumption of fault on the part of plaintiff. La.R.S. 32:71; Arceneaux v. Domingue, supra; Smiciklas v. Groendyke Transport, Inc., 505 So.2d 775 (La.App. 2d Cir.1987), writ denied, 506 So.2d 1231 (La.1987). The fact that Crews received a ticket after the accident for failure to yield does not substantiate plaintiff's claim that the collision occurred within his proper lane of travel. The mere issuance of a traffic citation is not conclusive on the issue of guilt. Plaintiff failed to introduce evidence regarding the ultimate resolution of the citation or even the basis for its issuance. Neither the ticket, the traffic report nor the testimony of any officer was introduced to show whether the ticket was issued based upon a finding that Crews' vehicle was in plaintiff's proper lane of travel or the mere fact that Crews was entering from a less favored roadway.
Therefore, Crews' negligence was not established by a preponderance of the evidence. The contrary conclusion reached by the trial court was manifestly erroneous.
The trial court also erred in finding that plaintiff was free of fault. The disinterested witnesses, Carso and Ackel, experienced motorcycle drivers, testified that plaintiff passed them at a rate of speed estimated at approximately 90-100 miles per hour, a very short distance prior to the *160 collision. Plaintiff was traveling at such a high rate of speed that when he passed the jeep Carson commented to Ackel that they should "start looking for pieces of body on the side of the road cause this guy is not going to make it far the way he's driving." Because of the numerous twists and curves on Park Avenue, the distance of visibility is limited at the various intersecting streets. One such curve exists immediately before the intersection of Pargoud, and the garbage truck entering Park Avenue from Pargoud apparently did not see plaintiff and pulled out in front of him. Plaintiff had to swerve into the opposite lane to avoid a collision with the truck. Due to this maneuver, the witnesses lost sight of plaintiff and did not see him again until the wreck. However, Ackel testified that less than a minute elapsed from the time the near-miss with the garbage truck occurred and the time they approached the accident scene. The likelihood that plaintiff had slowed down to the legal speed limit in this short time span is slight. Carso and Ackel's testimony regarding plaintiff's excessive rate of speed a few moments prior to the accident is corroborated by Crews and Lewis' testimony that plaintiff was traveling at such a high rate of speed immediately prior to impact he appeared only as "a flash".
All defense witnesses were in agreement that the Cadillac, which was originally proceeding south across Park Avenue, was impacted with sufficient force that it ended up facing east. Although the motorcycle weighed only 525-550 pounds, the impact rotated this large 1979 Cadillac almost a full 90 degrees. This evidence substantiates that plaintiff was speeding.
Further, the four defense witnesses placed the Cadillac completely out of plaintiff's proper lane of travel, indicating the point of impact across the centerline in the eastbound lane. Even if plaintiff's testimony regarding the point of impact is accepted, only a few feet of the rear end of the Cadillac remained in plaintiff's lane. Even though the distance between the curve on Park Avenue and the intersection of North 12th Street is apparently short, if plaintiff were traveling at a normal rate of speed and maintaining a proper lookout he should have been able to swerve and avoid the accident. However, by plaintiff's own admission, by the time he saw the Cadillac there was no time to break or turn.
Plaintiff's assertion that he was defensively driving 30 miles per hour with his headlights on and two fingers on the brake, aware of his surroundings, and pretending that he was "a squirrel on opening day and everybody (was) out to get (him)", is facially implausible.
The evidence of record shows that plaintiff breached his duty of ordinary care owed to drivers entering from side streets in that he failed to maintain a proper lookout, travel at a safe rate of speed and stay within his proper lane of travel. Calk v. Grains Dealers Mutual Insurance Company, 508 So.2d 624 (La.App. 2d Cir.1987).
The trial court's conclusion that plaintiff was entirely free of fault is not supported by the evidence and is clearly wrong. Even if Crews were negligent, we find plaintiff was contributorily negligent.

Decree
For the reasons assigned the judgment appealed from is REVERSED and there is judgment in favor of defendants and against plaintiff, dismissing his suit. Costs of court, both at trial and on appeal, are assessed to plaintiff.