583 So.2d 926 (1991)
Homer D. CHANEY, for the Use and Benefit of Meagan Ann CHANEY, Minor
v.
NATIONAL RAILROAD PASSENGER CORPORATION, Illinois Central Railroad Company, State of Louisiana and City of Ponchatoula.
No. 90 CA 1586.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
*927 David W. Robinson, Baton Rouge, Eric Pittman, Denham Springs, Thomas B. Watterman, Ponchatoula, for plaintiff-appellant Homer D. Chaney.
Christopher Moody, Hammond, for defendant-appellee City of Ponchatoula.
David S. Kelly, New Orleans, for defendant-appellee Nat. R.R. Co.
David N. Crawford, Baton Rouge, for defendant-appellee Dept. of Transp. and Development.
William Doran, Jr., Baton Rouge, for defendant-appellee Dept. of Justice.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is an appeal by the plaintiff, Homer D. Chaney, from a judgment of the trial court granting the City of Ponchatoula's motion for summary judgment and dismissing it from plaintiff's suit. The trial court granted summary judgment and dismissed the City of Ponchatoula (the City) from the suit based on the immunity granted by La.R.S. 9:2798.1, the discretionary function exception to governmental liability.

FACTS AND PROCEDURAL HISTORY
Ms. Mary Schilling, the mother of Meagan Ann Chaney and ex-wife of the plaintiff, was killed on June 16, 1988, when the car she was driving collided with an Amtrak train. The collision occurred at the intersection of Willow Street and the Illinois Central Railroad Company's railroad track in the City of Ponchatoula. It is undisputed that Willow Street is not a part of the state highway system, but falls under the jurisdiction of the City of Ponchatoula.
On November 23, 1988, Mr. Chaney filed this suit on behalf of his minor daughter, Meagan Ann Chaney, as her natural tutor, against Illinois Central, Amtrak, DOTD, *928 and the City of Ponchatoula, to recover damages resulting from the death of his ex-wife and Meagan's mother, Mary Schilling. The suit alleged in part that the City was negligent in failing to erect adequate warnings at the intersection to warn motorists of approaching trains.
At the time of the accident the only traffic control device in place to warn motorists of the railroad crossing and/or approaching trains was a "railroad cross buck" sign. This sign is mandated at all railroad crossings by La.R.S. 32:169(A).[1] The plaintiff alleged that the sign was not the proper height and distance from the roadway as required by the statute.
The plaintiff also alleged that this was a dangerous crossing and additional signals/warnings were required by La.R.S. 32:235(B).[2] The plaintiff contends that this statute imposes a legal duty on a political subdivision such as the City of Ponchatoula to erect warning signs sufficient to warn motorists of hazardous conditions.
The City moved for summary judgment, alleging that it had no statutory duty to place additional warnings at the crossing and is therefore immune from liability resulting from its decision not to do so pursuant to La.R.S. 9:2798.1. The trial court agreed and granted the City's motion for summary judgment, dismissing it from the suit.
The plaintiff filed a motion for a new trial, alleging that La.R.S. 9:2798.1 is unconstitutional. The trial court denied plaintiff's motion for a new trial without a hearing. The plaintiff then perfected the instant appeal, in which he urges that the trial court erred in three respects.

ASSIGNMENTS OF ERROR
The plaintiff first contends that the trial court erred in applying La.R.S. 9:2798.1 to this case because the City's liability is not based upon the exercise or performance, or failure to exercise or perform, any policy making or discretionary acts. The plaintiff also contends that summary judgment was inappropriate since there were material issues of fact still in dispute. Finally, plaintiff contends that the trial judge erred in not considering the issue of the statute's constitutionality when it was raised in the application for a new trial.

LA.R.S. 9:2798.1
La.R.S. 9:2798.1 grants the state and its political subdivisions immunity from liability arising from policy making or discretionary acts. It provides:
A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts *929 when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.
This statute does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; i.e. decisions based on social, economic, or political concerns. Fowler v. Roberts, 556 So.2d 1 (La.1989) (on rehearing); Socorro v. Orleans Levee Board, 561 So.2d 739 (La.App. 4th Cir.) writ granted, 568 So.2d 1068 (La.1990). The immunity from liability for discretionary acts granted to state governmental agencies by this statute is essentially the same as the immunity conferred on the federal government by the exception in the Federal Tort Claims Act.[3]
In Fowler, the Louisiana Supreme Court adopted the two step test set forth in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), (interpreting the FTCA), to determine whether the discretionary function exception to governmental liability applies. First, the exception does not apply when a statute, regulation, or policy specifically prescribes a course of action, i.e. where there is no element of choice, or discretion, involved. Second, the exception only confers immunity where the discretionary action involves the permissible exercise of a policy judgment grounded in social, economic, or public policy. Fowler, 556 So.2d at 15, citing Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958.
It is well settled that a governing authority which has jurisdiction over a particular roadway, in this case the City, has a legal duty to make that roadway reasonably safe for travel. This includes the duty to erect warning signs or barricades to warn motorists of unusually dangerous conditions such as sharp curves, unexpected intersections, or dangerous railroad crossings. La.R.S. 32:235(B); Langer v. Bienville Parish Police Jury, 541 So.2d 360 (La.App. 2nd Cir.), writ denied, 546 So.2d 177 (La.1989); Douget v. Allen Parish Police Jury, 520 So.2d 813 (La.App. 3rd Cir.1987); Laque v. St. Charles Parish, 444 So.2d 742 (La.App. 5th Cir.1984); Watts v. City of Baton Rouge, 248 So.2d 42 (La.App. 1st Cir.), writ denied, 259 La. 63, 249 So.2d 203 (1971); Wall v. American Employers Insurance Company, 215 So.2d 913 (La.App. 1st Cir.1968), writ denied, 253 La. 325, 217 So.2d 415 (1969).
Nevertheless, a governing authority has a certain amount of discretion as to the manner in which it will fulfill this duty. Whether or not to place warning signs at a particular intersection or crossing is a decision which the governing authority must make. However, we believe this to be an operational decision, not a policy-making or discretionary function decision for which La.R.S. 9:2798.1 provides immunity.
The policy decision, to maintain the roadway in a reasonably safe condition, has already been made by the legislature. Any decision regarding the manner in which the roads are made reasonably safe are operational in nature, and La.R.S. 9:2798.1 does not provide immunity for liability stemming therefrom. Valet v. City of Hammond, 577 So.2d 155 (La.App. 1st Cir.1991).
If this were not so, governmental entities charged with maintaining roadways in a reasonably safe condition would be granted immunity for wholesale dereliction of this duty, based only on the notion that whether or not to place traffic controls at a particular *930 intersection, etc., is a policy decision. We are of the opinion that the only policy decision that a governmental authority can make relating to a roadway, is whether or not to construct it (or assume responsibility for it in some cases) in the first place.
Once that decision is made, related decisions such as the design, method of construction, number and placement of signs and signals, level of maintenance, etc. are operational decisions. See Socorro, 561 So.2d at 756. If the effect of these decisions is that the roadway is made reasonably safe for travel, then the governmental authority responsible has no liability for accidents occurring thereon. La.R.S. 9:2798.1 does not grant immunity, and thereby pretermit consideration of whether the roadway is reasonably safe, where the alleged basis of liability is an operational decision.
However, because this case is before us on appeal from a summary judgment, and the issues which must be decided are factual, any ruling by us on the applicability of La.R.S. 9:2798.1 to the facts of this case would be premature.

SUMMARY JUDGMENT
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. The burden of proving that there is no genuine issue of material fact in dispute is upon the mover. Asian International, Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 435 So.2d 1058 (La. App. 1st Cir.1983); Munson v. Safeco Insurance Company, 411 So.2d 578 (La.App. 1st Cir.1982).
Whether or not the exercise of discretion by a governmental entity is a policy-making decision as contemplated by La.R.S. 9:2798.1, or an operational decision, is a question of fact. Jones v. New Orleans Aviation Board, 572 So.2d 1191 (La.App. 4th Cir.1990); Verdun v. State Department of Health & Human Resources, 559 So.2d 877 (La.App. 4th Cir.1990); Hawkins v. State Department of Health and Human Resources, 543 So.2d 1052 (La.App. 4th Cir.1989). Likewise, whether the exercise of discretion is protected by the discretionary immunity statute, or whether it is "willful, outrageous, reckless, or flagrant misconduct" is also a factual question. Id.
Given these unresolved and clearly disputed factual questions, the trial court was clearly wrong to grant the City's motion for summary judgment. In light of our disposition of the propriety of summary judgment on these issues, we pretermit discussion of the constitutionality of La. R.S. 9:2798.1.
Therefore, for the above and foregoing reasons, the judgment of the trial court granting the City of Ponchatoula's motion for summary judgment and dismissing it from plaintiff's suit is hereby reversed and this case is remanded to the trial court for further proceedings. Costs are assessed against the City of Ponchatoula in the amount of $287.00.
REVERSED AND REMANDED.
NOTES
[1] La.R.S. 32:169(A) provides in pertinent part:

A. Any person, firm, or corporation controlling any railroad track which intersects a public road or street at grade crossings ... shall erect and maintain a "Railroad Cross Buck" sign at the crossings above referred to which shall be white with the "Railroad Crossing" in black letters.... This sign shall be erected on the right hand side of the roadway of such approach to the crossing not more than fifty feet nor less than fifteen feet from the nearest rail and not less than six feet or more than twelve feet from the edge of the roadway. The sign shall be ten feet above the level of the highway and said sign shall be constructed in accordance with the standards of the office of highways.
[2] La.R.S. 32:235(B) provides in pertinent part:

B. Local municipal and parish authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this Chapter, regulations of the department and commissioner adopted pursuant hereto, and local traffic ordinances.... If any such device hereafter erected by a political subdivision of this state fails to conform to the manual or specifications, payment of any funds allocated to that political subdivision shall be withheld by the department until the standards established by the department are complied with.
[3] 28 U.S.C. § 2680(a).