604 So.2d 617 (1992)
ESTATE OF Willie THOMAS, Sr., Estate of Mary Lou Thomas, and Estate of Lueressie Washington Stuart, Plaintiffs-Appellees,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellant.
No. 23653-CA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1992.
Writ Denied November 13, 1992.
*619 Rankin, Yeldell, Herring & Katz by Richard A. Bailly, Sp. Asst. Atty. Gen., Bastrop, for defendant-appellant.
Mack E. Barham, Robert E. Arceneaux, Kathy S. Austin, New Orleans, Cooper & Hales by Myrt T. Hales, Jr., Rayville, Michael E. Kramer, Winnsboro, for plaintiffs-appellees.
Before MARVIN, NORRIS and STEWART, JJ.
STEWART, Judge.
Plaintiffs, the natural children of Willie Thomas, Sr. and Mary Lou Thomas (eight *620 children), and of Lueressie Washington Stuart (three children), filed suit against the State of Louisiana, Department of Transportation and Development (DOTD), alleging that DOTD's failure to properly sign a low clearance bridge in Richland Parish caused the wrongful death of their parent(s). The trial court entered judgment against DOTD, finding it 45 percent at fault and awarding damages to plaintiffs. DOTD appeals. We amend and affirm the judgment.

FACTS
On October 4, 1989, Richard G. Rosson was transporting a load of pumpkins in the trailer of a 63 foot, 18-wheel tractor trailer rig which was 13 feet 6 inches in height. He drove eastbound on Louisiana Highway 15, through its intersection with Highway 133, toward the Boeuf River Bridge in Richland Parish. Rosson saw a sign warning of a 13 inches 4 feet low clearance and tried to turn the truck around on an unnamed parish road near the bridge. During the process, Rosson backed the truck across Highway 15 and obstructed both travel lanes.
Willie Thomas, Sr., accompanied by his wife, Mary Lou, and a friend, Lueressie Stuart, was driving eastbound on Highway 15. As they approached the Boeuf River Bridge, their car collided with, and ran underneath, the truck. The top of the car was cut off and the car caught fire. All three occupants of the car were killed.
Plaintiffs, the natural children of the Thomases: Nathaniel, Phaion, and Ricky Thomas; Willie, Jr.; Alma Mathis; Julia Watson; and Carey and Henry Wilson; along with the natural children of Stuart: Shewondolyn, Marshea, and Michael Swiney, filed a wrongful death suit against DOTD for negligent highway design and improper placement of warning signs. The trial court found DOTD negligent, allocated its fault at 45 percent, and awarded each plaintiff $25,000 per deceased parent to be paid by DOTD. DOTD appeals and assigns as error the trial court's
(1) personal inspection of the scene of the accident during trial and basing his decision on liability on his observation made during that visit;
(2) finding that the location of low clearance warning signs was a cause in fact of the accident of October 4, 1989;
(3) substitution of its own judgment for that of DOTD engineers as to the appropriate location of low clearance warning signs;
(4) finding that DOTD was negligent in its installation of low clearance warning signs;
(5) finding that no safe place existed to allow large trucks to turn around west of the Boeuf River Bridge;
(6) finding that the curvature of the highway, and other vision limiting factors, rendered the area impermissibly dangerous;
(7) allocation of fault; and
(8) excessive award of damages.
We agree as to the allocation of fault but disagree with the remaining assignments.
Plaintiffs answer the appeal praying for an increase in the damages awarded and in the percentage of fault allocated to DOTD. We deny plaintiffs' request.

DISCUSSION

Visit to Accident Scene
DOTD challenges as error the trial court's personal inspection, during trial, of the scene where the accident occurred, and contends that the trial court based its decision on liability on observations made during that visit.
A trial court generally conducts an inspection of the site if the testimony is so confusing and conflicting that such an inspection would aid the court in visualizing the disputed occurrence. Landry v. Jefferson Davis Parish School Board, 478 So.2d 194, 196 (La.App. 3d Cir.1985). The decision whether such a physical inspection should be made is within the discretionary authority of the trial court. Hardy v. Brown, 372 So.2d 573, 577 (La.App. 2d Cir.1979); Landry, supra. As stated in Landry, 478 So.2d at 196, *621 A trial court may visit sites which are the subject of the litigation before it, not for the purpose of supplying new evidence, but for the purpose of determining, when the evidence regarding such sites is in hopeless conflict, which version is worthy of belief. [Citation omitted.]
In Dodson v. Webster Parish Police Jury, 564 So.2d 760 (La.App. 2d Cir.1990), writ denied, 567 So.2d 1127 (La.1990), the trial court told the attorneys that it would like to view the scene. During a break at trial, the plaintiffs' attorney suggested that the judge and attorneys visit the scene then, and they did so. In written reasons for judgment, the court stated that its personal inspection of the accident was persuasive to resolve the issue of whether the road posed an unreasonable danger. This court noted that,
[T]he judge's personal observation did not supersede the trial evidence or usurp the litigants' role in presenting the case. It was merely an effort, within the trial court's discretion, to clarify evidence that was in conflict. Under the circumstances, it was not error. [Citations omitted.]
Dodson, supra, 564 So.2d at 765. However, this court has recognized that,
Disputed facts are not in the same vein as the laws of nature, geographic and historical facts, time, laws and other matters of common knowledge. The resolution of disputed issues of material fact by judicial notice is improper. [Citation omitted.]
Elliott v. U.S. Fidelity and Guaranty Co., 568 So.2d 155, 158 (La.App. 2d Cir.1990). We recognize and distinguish Elliott, supra, where this court noted that "... the trial court was in error in visiting the accident site to perform tests, measurements and make visual observations without the knowledge, consent or presence of the attorneys and to rely on these tests and observations in deciding the case." Elliott, supra, 568 So.2d at 158. Unlike the instant case, the record in Elliott revealed no factual basis for the conclusions reached by the trial court without the insight allegedly gained by the trial court from the experiments it performed at the scene.
After viewing the accident scene, the trial court stated in open court that the primary reason for the visit was that it wanted to see at what point the first low clearance sign was visible. In its oral reasons for judgment, the trial court noted that, even under daylight conditions, while driving east on Highway 15 toward Highway 133 and specifically looking for the low clearance warning sign, the sign was visible only at a point where it would be difficult to slow down in time to use Highway 133 as either a turn around or an alternate route. The trial court also indicated that it drove onto the parish road where Rosson attempted to turn the truck around and observed that the mailbox mentioned by Rosson was not accurately depicted on some of the exhibits and was a factor in Rosson's attempt to maneuver the 18-wheeler.
It was evident from the oral reasons given by the trial court that the purpose and effect of his visit to the accident scene was to clarify his understanding of the evidence presented at trial. Contrary to the assertions of DOTD, the trial judge did not attempt to substitute his fact finding for evidence adduced at trial. The trial court continually referred back to the testimony of various witnesses and related observations he made during the visit to the scene to specific testimony and exhibits which were introduced during trial.
The trial court's observations at the accident scene merely aided its analysis of the evidence presented by both sides. Upon weighing all of the evidence, the court made its factual determinations that (1) between Highway 133 and the low clearance bridge, no safe place existed where trucks of this size could safely turn around and bypass the bridge, (2) the curvature of the highway and other factors which limited vision of eastbound traffic enhanced the dangerous nature of the scene, and (3) DOTD should have placed a low clearance warning sign such that traffic could detour around the bridge. We find that the trial court's inspection was not an abuse of its *622 discretion. See Hardy, supra, 372 So.2d at 577. On this record, the trial court's visit to the accident scene did not constitute reversible error.
Moreover, there were no objections made when the court informed counsel of its visit and or when it asked questions of the last defense expert witness based on observations made during the visit. In fact, early on in the trial, plaintiffs' counsel requested that the court visit the accident scene. DOTD's counsel stated that, though he did not join in the request, he left the decision whether to visit the accident scene to the trial court. Where there is no objection to the judge's action, the error, if any, is considered waived. Dodson, supra. The record reveals that the trial court did not act as a witness, therefore DOTD's assertion that LCE art. 605 applies is without merit. Because the trial court utilized the observations he made during his visit to the accident scene for the purpose allowed under the jurisprudence, we find no merit to this assignment.
The trial court's visit to the accident scene occurred both during trial and in the absence of counsel. Even though we have found, under these facts and circumstances, no abuse of the trial court's discretion, we do not encourage the trial courts to make such visits in the future without the presence of counsel. We emphasize that it would have been more prudent for the court to notify counsel prior to its visit in order to have counsel present during its observation.
The instant circumstances are similar to that in Dodson, and different from Elliott, in that the trial court's personal observation did not supercede the evidence or infringe upon the parties' presentation of the case. The trial court utilized its observations to clarify the evidence rather than to rely on its own observations, exclusive of the evidence, in deciding the case. By contrast, these circumstances are similar to Elliott, and different from Dodson, because counsel were not afforded the opportunity to accompany the trial court to the scene. We conclude that the instant circumstances lie somewhere between those of Dodson and Elliott and fall just short of reversible error.

Was DOTD Negligent?
DOTD contends that the trial court erred in finding that the location of low clearance warning signs was a cause-in-fact of the accident and in finding DOTD negligent in its installation of the signs. DOTD asserts that the sole cause of the accident was the poor judgment of the truck driver, Rosson, combined with the negligence of Willie Thomas, Sr.
A court of appeal may not set aside a trial court's factual finding unless it is manifestly erroneous or clearly wrong; likewise, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), on remand, 370 So.2d 1262, writ denied, 374 So.2d 660 (La.1979).
Under Louisiana's duty risk approach, the first inquiry in the analysis is whether the conduct complained of was a cause-in-fact of the injury.
In determining causation, we do not consider whether the conduct was negligent or look to policy considerations, but only whether the conduct was a substantial factor leading to the accident, i.e., whether it had a direct relationship to the accident. In making this determination, we consider whether, more probably than not, the conduct complained of was a necessary ingredient of the accident. [Citations omitted.]
Miller v. Fields, 570 So.2d 39, 42 (La.App. 4th Cir.1990), writ denied, 575 So.2d 374 (La.1991). We therefore address the question of whether the absence of a low clearance warning sign west of the Highway 133/Highway 15 intersection was a substantial factor leading to the accident or whether it had a direct relationship to the accident.
There was evidence at trial from which a trier of fact could reasonably conclude that, had there been a low clearance warning sign placed west of the intersection, Rosson would have taken action prior *623 to proceeding toward the unnamed parish road and, more probably than not, would not have obstructed Highway 15. Rosson testified that he saw the second low clearance warning sign and turned off Highway 15 onto the parish road to try to turn the truck around so he could go back to Interstate 20. He indicated that, had he seen the first warning sign in time, he would have turned around at or near the intersection of Highway 15 and Highway 133, at a store or other large area near that intersection. Rosson also said that, had there been a sign designating 133 as an alternate route, he would have taken 133 back to Interstate 20.
Rosson detailed his attempt to turn around at the unnamed parish road. He described how narrow the parish road appeared at night and what seemed to be a drop-off or ditch on the side of the road, as he tried to back the 63 foot truck off the parish road and across Highway 15, at an angle, toward the parish road on the opposite side of Highway 15. Rosson was the only licensed 18-wheel truck driver who testified about maneuverability of the truck on the parish road.
Plaintiffs' expert witness, traffic engineer Dewayne T. Evans, indicated that the first sign did not warn a driver, who was eastbound on Highway 15, in time for the driver to use Highway 133 as an alternate route. Evans testified that Highway 15 needed a warning sign 300 or 400 feet west of Highway 133, along with information that trucks over 13 feet 4 inches should turn left at that intersection.
The trial court found as fact that the two warning signs, both located east of the Highway 133/Highway 15 intersection, did not provide sufficient notice to allow large trucks to safely detour around the bridge. Under the circumstances of this case, this factual determination is neither manifestly erroneous nor clearly wrong. Finding no manifest error in the trial court's factual determination, we conclude that the location of the signs was a cause-in-fact of the road obstruction and therefore a cause-in-fact of the accident.
Finding causation-in-fact, however, does not establish liability. Plaintiffs must also prove that (1) DOTD owed a duty to the driver under the instant facts and circumstances; (2) there was a breach of this duty; and (3) the harm caused fell within the scope of protection afforded by such duty. See Miller, supra.
As stated in Chaney v. National R.R. Passenger Corp., 583 So.2d 926, 929 (La.App. 1st Cir.1991):
It is well settled that a governing authority which has jurisdiction over a particular roadway, ..., has a legal duty to make that roadway reasonably safe for travel. This includes the duty to erect warning signs or barricades to warn motorists of unusually dangerous conditions such as sharp curves, unexpected intersections, or dangerous railroad crossings. [Citations omitted.]
Of course, whether DOTD breaches its duty depends upon the facts and circumstances of each individual case. Guy v. State Dept. of Transportation and Development, 576 So.2d 122, 125 (La.App. 2d Cir.1991); Meyers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986).
It is undisputed that, once the decision had been made by DOTD to erect the low clearance warning signs, DOTD had a duty to locate the low clearance signs at either an alternate route or wide area where traffic could turn around. It is also undisputed that the unnamed parish road was the only public road where Rosson could have tried to turn the 63 foot, 18-wheel truck around between Highway 133 and the bridge. The question is therefore whether the unnamed parish road, i.e., the wide area where the second low clearance sign was located, was an adequate place for the 63 foot truck to turn around.
The trial court found as fact that the area between Highway 133 and the bridge, where the unnamed parish road was located, was an impermissibly dangerous area for the 18-wheel truck to turn around. Implicit in the trial court's findings is the determination that DOTD failed to warn Highway 15 traffic of the low clearance bridge in a manner which allowed *624 a truck the size of Rosson's to safely turn around. The testimony of Rosson and Evans, as discussed above, supports these factual determinations.
DOTD had a duty to the driver to give notice of the low clearance bridge in a manner which provides an adequate area for the 63 foot truck to turn around. Plaintiffs presented sufficient evidence for the trial court to find that DOTD breached this duty by placing the first low clearance warning sign east of the Highway 133/Highway 15 intersection, and the second sign near a parish road which was inadequate for the 63 foot truck to turn around. We find that this duty to properly sign encompasses the risk that the truck would cause an accident while trying to turn around on an narrow area in an attempt to detour around the bridge. Accordingly, we find no error in the trial court's determination that DOTD was negligent in its signing.
DOTD also contends that the trial court erred by substituting its own judgment for that of DOTD engineers as to the appropriate location of low clearance warning signs. However, it is within the province of the trier of fact to assess the credibility of expert witnesses and the weight to be assigned to their testimony. Hatcher v. State Through DOTD, 467 So.2d 584, 589 (La.App. 3d Cir.1985). There was conflicting expert testimony regarding the placement of signs, with evidence sufficient to support the trial court's findings. In the absence of manifest error, this court will not disturb the evaluation of and conclusions drawn from competing expert testimony. See Hatcher, supra.

Immunity
DOTD contends that the LSA-R.S. 9:2798.1 discretionary function exception bars this suit against DOTD. DOTD asserts that the decision to place low clearance signs was made at the administrative level, and was not an operational decision. DOTD contends that its district traffic operations engineer had the discretion to make a reasonable decision about where to put the low clearance warning signs.
The LSA-R.S. 9:2798.1 immunity from liability for discretionary acts is essentially the same as the immunity conferred on the federal government by the exception in the Federal Tort Claims Act (FTCA). Chaney v. National R.R. Passenger Corp., supra. Our supreme court adopted the following two-step inquiry, used in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) to examine immunity under the FTCA, to analyze the applicability of the R.S. 9:2798.1 discretionary exception: (1) whether a statute, regulation or policy specifically prescribes a course of action; and (2) whether the challenged action is grounded in social, economic or political policy. Verdun v. State Dept. of Health & Human Resources, 559 So.2d 877, 879 (La.App. 4th Cir.1990); see also, Fowler v. Roberts, 556 So.2d 1, 13-16, on rehearing (La.1990).
Whether the duty to warn is discretionary at the policy-making level or the operational level depends on the evidence and presents a question of fact. Verdun, supra.
Discretion exists only when a policy judgment has been made. Judicial interference in executive actions involving public policy is restrained by the exception. Thus, the exception protects the government from liability only at the policy making or ministerial level, not at the operational level....
If there is no room for an official to exercise a policy judgment, the discretionary function exception does not bar a claim that an act was negligent. When the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures. [Citation omitted and emphasis ours.]
Fowler v. Roberts, 556 So.2d 1, 15-16, on rehearing (La.1990).
Donald E. Tolar, DOTD's district traffic operations engineer for District 5, testified that the location of the warning signs conformed to the requirements of the Manual of Uniform Traffic Control Devices (MUTCD). He indicated that DOTD follows the requirements and recommendations *625 of the MUTCD. The manual recommends placement of low clearance warning signs at an alternate route or at a wide area.
According to Tolar, maintenance personnel normally placed the signs unless there was a particular question about where to place them. There was no formal review process to determine whether signs were properly placed, although Tolar did look at the various signs as he traveled the state's highways.
Implicit in the MUTCD is a requirement that DOTD formulate policy and make rules to govern placement of signs without making arbitrary decisions on an ad hoc basis. There was no element of choice exercised by DOTD because it routinely allowed placement of the signs by maintenance personnel without further inquiry. When there are no specific standards for placement of the signs, the operational decision of whether to place the clearance sign to the east and/or west of the Highway 15/Highway 133 intersection is not a discretionary act. Thus, the state's argument fails the first prong of the two-step Berkovitz analysis. See and compare Fowler, supra, 556 So.2d at 16.
Assuming, arguendo, that the signing decision involved a choice, DOTD's signing decision must have been rooted in social, economic or political policy for the R.S. 9:2798.1 discretionary function exception to apply. See Fowler, supra, 556 So.2d at 16. The record contains no evidence which suggests that the decision to place both warning signs east, and none west, of Highway 133 was rooted in such policy considerations.
We agree with our brethren of the Fourth Circuit in their statement that
[A] governing authority has a certain amount of discretion as to the manner in which it will fulfill this duty. Whether or not to place warning signs at a particular intersection or crossing is a decision which the governing authority must make. However, we believe this to be an operational decision, not a policy-making or discretionary function decision for which La.R.S. 9:2798.1 provides immunity.
Chaney, supra, 583 So.2d at 929.
Once the determination had been made to use low clearance warning signs, the placement of the signs was an operational decision which was not grounded in policy matters. Accordingly, the discretionary function exception to governmental liability does not apply to immunize DOTD for its negligence.
Having found no R.S. 9:2798.1 immunity, we reject DOTD's argument that, because the signalization decision is within the discretion of DOTD traffic engineers, it is not to be questioned by the court unless it is unreasonable.

Damages
DOTD contends that the trial court erred in awarding excessive damages to plaintiffs. By answer to the appeal, plaintiffs assert that the award of damages is inadequate. All parties challenge the trial court's allocation of fault.
A reviewing court must look first to the individual circumstances of the present case, not to prior awards, before a trial court award for damages can be questioned as inadequate or excessive. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537, 539 (La.App. 2d Cir. 1987). A damage award should not be disturbed by a reviewing court absent a showing of a clear abuse of the trial court's discretion. Id. Resort to comparison of prior awards in similar cases is proper only after an articulated analysis of the facts discloses an abuse of discretion. Id.
The appropriate procedure for testing whether the trier of fact has abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. The converse of this rule is also true. In determining whether the trier of fact abused its discretion in making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Therefore, *626 because the inquiry is whether the trial court's award for general damages was inadequate, we must examine the facts contained in this record in the light most favorable to the defendant to determine whether the trial court abused its discretion. [Citations omitted.]
Higginbotham, supra.
When there is a legal right to recovery of damages but the amount cannot be exactly estimated, the courts have reasonable discretion to assess them based upon all the facts and circumstances of the particular case. Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691, 692-693 (La.1981). In reviewing quantum awards, an appellate court can disturb an award made by the trial court only where the record indicates that the trier of fact abused its discretion in making the award. Id. However, absent such abuse we cannot disturb the award on appeal. Bickham v. Arlie Corp., 468 So.2d 658, 661 (La.App. 4th Cir.1985), writ denied, 470 So.2d 120 (La.1985); Coco v. Winston Industries, 341 So.2d 332 (La.1976).
Each of the Thomas' eight children testified, as did each of Stuart's three children. The testimony revealed that, at the time of the accident, each was a very close knit family. Most of the plaintiffs lived either with their parents or nearby, such as next door, across the street, or within a couple of blocks. Two of the Thomas' sons identified the bodies and recalled seeing parts of Mrs. Thomas' body in the vehicle after the accident. All of the plaintiffs indicated that, up until the accident, their parents played a very prominent and directional role in their adult lives. Each plaintiff maintained frequent and meaningful contact with his or her parent(s).
The accident itself was tragic. The 18-wheel truck straddled both lanes of traffic on Highway 15. Willie Thomas drove the vehicle in which his wife and Mrs. Stuart were passengers. The testimony revealed that there was no indication that the car driven by Mr. Thomas attempted to stop or put on brakes before hitting the truck. Testimony also indicated that the driver, Willie Thomas, Sr., was in good physical condition prior to his death, had no eye problems and did not wear glasses. The car hit the truck and the top of the car was sheared off as the car went underneath the truck. The truck driver, Rosson, said he grabbed a fire extinguisher and tried to put out the fire. One of the Thomas' sons said he found his mother's severed hand in the car and saw some of her organs. Another son of the Thomas' testified that he still wakes up at 2:00 a.m. each morning because it was that time when a state trooper awakened to tell him about the accident. Two of Stuart's children turned to illegal drugs after the death of their mother.
The trial court awarded plaintiffs $25,000 each per parent, assessed against DOTD, and fixed DOTD's fault at 45 percent. At the trial court's 45 percent fault allocation, the effective total award is $55,556 per child per parent. Considering the foregoing legal principles, and after careful review of the record, we conclude that the evidence supports these awards. Based on the facts contained in the record, the awards do not constitute an abuse of discretion by the trial court, whether viewed in the light most favorable to DOTD or viewed in the light most favorable to the plaintiffs. We therefore find this award neither excessive nor inadequate. Accordingly, we find no merit to the assignment raised by DOTD that the award is excessive, and no merit to plaintiffs contention that the award is inadequate.

Apportionment of fault
Both plaintiffs and DOTD challenge the trial court's allocation of fault among Rosson, DOTD, and Willie Thomas, Sr. DOTD argues that its fault was nonexistent because the accident resulted from the combined negligence of Rosson and Thomas. Plaintiffs request an increase in the percentage of fault allocated to DOTD. Although we find no error in the amount of the awards, we find manifest error in the allocation of fault.
The question of comparative fault is a matter of fact subject to the manifest error rule. Murphy v. Auger Trucking, 598 So.2d 443 (La.App. 2d Cir.1992); Mohr *627 v. State Farm Ins. Co., 528 So.2d 144 (La.1988). For a detailed discussion of the factors to be considered in determining relative percentages of fault, see Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985).
In its oral reasons for judgment, the trial court allocated fault as follows: Truck Driver (Rosson)80 percent; DOTD15 percent; Victim Driver (Thomas, Sr.)5 percent. However, the trial court subsequently rendered written reasons for judgment in order to clarify its oral reasons and allocation of fault. In the written reasons, The trial court fixed the following percentages of fault:

Truck Driver (Rosson)  55 percent
DOTD  45 percent
Victim Driver (Thomas, Sr.)  5 percent

We note at the outset that the sum of the clarified percentages exceeds 100 percent. Although the placement of the warning signs was a substantial factor leading to the accident, Rosson's decision to back the truck across Highway 15 was a much more direct cause of the accident than is reflected in his 55 percent share of fault. For this reason, we amend the judgment to reflect that Rosson was 65 percent at fault and DOTD 30 percent at fault for the accident. The 5 percent share of fault assessed to Willie Thomas, Sr. was neither manifestly erroneous nor clearly wrong, and we do not disturb that allocation. The resultant award to plaintiffs, assessed against DOTD, is accordingly reduced to $16,667, per plaintiff per deceased parent, for a total of $316,673.

CONCLUSION
For the foregoing reasons, we amend the judgment to allocate 65 percent of the fault of this accident to the truck driver, Richard G. Rosson, and 30 percent to DOTD. The amended judgment filed June 17, 1991, beginning with the second full paragraph of the second page and ending with the numerical subtotal on the third page, is amended to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the percentages of fault attributable to each party are as follows:

Truck driver and condition of the
 truck  65%
State of Louisiana, DOTD  30%
Victim driver  5%
Two passengers  0%

IT IS ORDERED AND DECREED that the amount to be paid by the State of Louisiana, Department of Transportation and Development for their portion of the fault shall be:
FOR THE WRONGFUL DEATH ACTIONS OF THE LUERESSIE WASHINGTON STUART BENEFICIARIES:

Marshea Swiney $16,667.00
Shewondolyn Swiney $16,667.00
Michael Swiney $16,667.00
 __________
 Subtotal $50,001.00

FOR THE WRONGFUL DEATH ACTIONS OF THE MARY LOU THOMAS BENEFICIARIES:

Henry L. Wilson $16,667.00
Carey Wilson $16,667.00
Willie Thomas, Jr. $16,667.00
Julia T. Watson $16,667.00
Nathaniel C. Thomas $16,667.00
Ricky L. Thomas $16,667.00
Phaion L. Thomas $16,667.00
Alma L. Mathis $16,667.00
 ___________
 Subtotal $133,336.00

FOR THE WRONGFUL DEATH ACTIONS OF THE WILLIE THOMAS, SR. BENEFICIARIES:

Henry L. Wilson $16,667.00
Carey Wilson $16,667.00
Willie Thomas, Jr. $16,667.00
Julia T. Watson $16,667.00
Nathaniel C. Thomas $16,667.00
Ricky L. Thomas $16,667.00
Phaion L. Thomas $16,667.00
Alma L. Mathis $16,667.00
 ___________
 Subtotal $133,336.00

In all other respects, the judgment of the trial court is affirmed. Costs of the appeal are assessed to DOTD.
AMENDED AND, AS AMENDED, AFFIRMED.