WILLIAMS, Judge.
Plaintiffs, Judy Dupclay Miller and Earl Miller, Sr., appeal the trial court judgment in favor of defendant, State of Louisiana, Department of Transportation and Development (DOTD). The issues before this Court are: 1) whether the trial court was clearly wrong in its finding that plaintiffs failed to prove that their deceased son violated the control of access to Interstate-10 just before he was struck and killed by a vehicle on the service road; 2) if so, whether a gap in the control of access barrier to Interstate 10 was a cause-in-fact of the accident in this case; and 3) whether defendant owed a duty to the decedent as he crossed the service road to the interstate. We affirm.
At 6:15 p.m. on February 16, 1986, plaintiffs’ fourteen year old son, Earl Miller, Jr., was struck by a car and killed on the north I — 10 service road in New Orleans East. Plaintiffs alleged that the decedent had crossed I — 10 under an overpass near his home in order to reach the cinema on the north side of the highway. He allegedly traversed the highway along the Citrus Canal,[1] an area that was restricted but apparently used by pedestrians as a shortcut under I — 10, as evidenced by testimony of a well worn foot path in the area. After successfully crossing I — 10, the decedent attempted to cross the north service road, where he was struck and killed. The point of impact was approximately seventy-five feet from the service road bridge over the Citrus Canal.
The service road bridge over the Citrus Canal is bordered on either side by a cement guardrail approximately three feet high. The approaches to the bridge are bordered on either side by metal guardrails which stand approximately two feet above ground level. This metal guardrail along the approach to the bridge extends just beyond the point where decedent was killed, so that decedent evidently crossed over this guardrail and into the path of an oncoming vehicle.
A five foot chain link fence separates the I — 10 service road from the main traveled sections of the interstate. The fence controls access to the main section of the interstate. Near the Citrus Canal, this fence “overlaps” the service road guardrail for a distance of 100 — 125 feet and the concrete bridge rail for several feet on *41 either side of the canal. However, at the time of the accident, the fence ended at or near the canal without a “tie-in” to the bridge railing, so that there was an area of approximately six feet through which a pedestrian could pass and thereby cross under the I—10 overpass along the canal.
Plaintiffs filed suit against the DOTD and several other defendants, alleging in pertinent part that the DOTD was negligent and/or strictly liable for the faulty control of access to the I—10 which resulted in their son’s death.[2] After a bench trial, the court below found in favor of the DOTD, holding that there was “inconclusive” evidence to show that the decedent crossed the I—10 in the restricted area of the Citrus Canal rather than through Read Road or some alternate route. The trial court further held that, even if decedent did cross the I—10 in the manner asserted by plaintiffs, the DOTD owed no duty to decedent once he traversed the main highway and reached a “position of relative safety” on the service road. Plaintiffs filed this appeal.
Plaintiffs first allege that the trial court misapplied the causation test in its analysis of the facts of this case and that the ineffective control of access along the interstate in the area of the Citrus Canal was a cause-in-fact of decedent’s injury. Incorporated into plaintiffs’ first assignment of error is the argument that the trial court erred in finding that they did not sustain their burden of proving that the decedent actually crossed the interstate via the Citrus Canal. This assignment of error has merit.
The trial court found the record void of any evidence that the decedent arrived at the service road in the manner asserted by the plaintiffs and held that, in the absence of conclusive evidence, plaintiffs failed to carry their burden of proof. After careful review of the record, we conclude that the trial court clearly erred.
Although the record contains no direct evidence of the route taken by the decedent before his fatal accident, the record does contain considerable circumstantial evidence that decedent traversed the interstate along the Citrus Canal. A path was worn along the alleged route, and the testimony of Jeffrey Trammelle, decedent’s “best friend”, established that the route along the Citrus Canal was well known to young people in the area as a short cut for traversing I—10 and was known to decedent. On the night of the accident, decedent was in a hurry to catch up with his friends at the cinema on the opposite side of I—10. The distance between decedent’s street and the point of impact was considerably shorter along the alleged route than along the alternate route of Read Road. Finally, the police diagram in evidence shows that decedent was struck on the Citrus Canal side of the cinema, indicating that he was approaching from that side.
Thus, contrary to the trial court’s reasons for judgment, the record contains more than plaintiffs’ mere assertion that the decedent crossed I—10 via the Citrus Canal short cut. Accordingly, we hold that the trial court clearly erred in holding that plaintiffs failed to prove the route taken by the decedent. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978).
Having found that the trial court erred in finding that the record contained no evidence that decedent crossed I—10 in the manner alleged, we now consider whether the gap in the control of access was a cause-in-fact of the accident. We hold that it was.
Louisiana has adopted the duty-risk approach to determine whether liability exists in a particular case. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La. 1976); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (La.1972). Under the duty-risk analysis, the first inquiry is whether the conduct complained of was a eause-in-fact of plaintiff’s injury. Shelton v. Aetna Casualty & Surety Co., 334 So.2d at 409; Mang v. Palmer, 557 So.2d 973, *42 974 (La.App. 4th Cir.1989). In determining causation, we do not consider whether the conduct was negligent or look to policy considerations, but only whether the conduct was a substantial factor leading to the accident, i.e., whether it had a direct relationship to the accident. Id. In making this determination, we consider whether, more probably than not, the conduct complained of was a necessary ingredient of the accident. Laird v. Travelers Insurance Co., 263 La. 199, 267 So.2d 714 (1972).
In the instant case, had there not been a gap in the control of access near the Citrus Canal, decedent probably would not have taken this route and, more probably than not, would not have crossed the service road where he was killed. Therefore, the gap in the fence may have been a cause-in-fact of the accident.
Finding causation-in-fact, however, does not establish liability. Plaintiffs must also prove that DOTD owed a duty to decedent once he reached the service road; that there was a breach of this duty; and that the harm caused fell within the scope of protection afforded by the duty. Hill v. Lundin & Associates, Inc., supra; Annis v. Shapiro, 517 So.2d 1237, 1238 (La.App. 4th Cir.1987).
In its reasons for judgment, the trial court found that, even if a faulty control of access barrier were a cause-in-fact of the accident, DOTD owed no duty to decedent on the service road itself. Plaintiffs assert that the trial court erred in so finding. This assignment is without merit.
It is undisputed that DOTD had a duty to prevent access to the main section of 1-10. The DOTD is responsible for the control and regulation of the interstate system in Louisiana, which includes the main portion of I — 10 and the service roads. Duane Evans, plaintiffs’ own expert consulting traffic engineer, explained the nature and purpose of a control of access. He testified that most highways serve a dual purpose: 1) to serve traffic; and 2) to provide access to and from adjacent property owners. With the highest class of traffic movement {e.g., an interstate highway), access to and from adjacent property owners is disallowed from the highway itself. As a result, service roads are built[3] and a control of access line is delineated between the service road and the main highway. The. intention behind this barrier is to control access onto the interstate highway and thereby prevent vehicles, animals and pedestrians from crossing the main highway, while at the same time, allow traffic to and from businesses along the service road. This testimony was corroborated by defense experts, Willie T. Taylor, Jr. and Boyd T. Gautreaux.
However, we hold that DOTD’s duty to provide an effective control of access to the main portion of the interstate does not encompass the harm encountered by decedent in the instant case. At the time he was struck, decedent had successfully crossed the main I — 10, had left the restricted area and had walked along the unrestricted area for a distance of seventy-five feet. Moreover, the risk of crossing the service road is not in itself an unreasonable one. Unlike the main span of I — 10, which has an unimpeded traffic flow, the service road accommodates traffic to and from businesses and interstate access routes. Additionally, Gautreaux testified that there are some situations where pedestrians would actually need to traverse the service road, e.g., after alighting from a bus on the I — 10 side of the road. Under all of the circumstances, we cannot say that the gap in the control of access constituted an unreasonably dangerous condition for a prudent person using ordinary care under the circumstances. Compare Hines v. Department of Transportation & Development, 503 So.2d 724 (La.App. 3d Cir.1987), writ den. 505 So.2d 1151 (La. 1987). DOTD’s duty did not encompass the risk that decedent would violate the control of access, travel a significant distance along the road and then unsuccessfully attempt to cross in an unrestricted area.
Finally, we consider whether the gap in the control of access presented an unreasonable risk of harm for which DOTD *43 would be strictly liable. The judicial process in determining whether a risk is unreasonable under strict liability precepts is similar to that employed in deciding the scope of the duty under the duty-risk analysis. Entrevia v. Hood, 427 So.2d at 1149. See also Jacoby v. State, 434 So.2d 570, 578 (La.App. 1st Cir.1983), writ den. 441 So.2d 771 (La.1983); Snider v. Pagragan, 480 So.2d 1053, 1054 (La.App. 5th Cir.1985), writ den. 481 So.2d 1355 (La. 1986). Having considered the facts of this case from the standpoint of justice and social utility, see Entrevia v. Hood, 427 So.2d at 1149, we hold that the risk created by the gap in the control of access near the Citrus Canal and encountered by decedent here (i.e., that of crossing the service road in that area) was not an unreasonable one. Accordingly, DOTD is not strictly liable for plaintiffs’ damages.
For the foregoing reasons, the judgment of the trial court in favor of DOTD is affirmed.
AFFIRMED.

. The Citrus Canal, which crosses underneath the 1-10, is constructed with cement walls that slope at a forty-five to sixty degree angle on either side. Pedestrians using the short cut would walk along the sloped walls of the canal.

. Several defendants were dismissed prior to the completion of the trial and are not parties to this appeal.

. The service roads in this case were actually built before the main portion of the interstate.