| | | |
|---|---|---|
| **DANIEL HARRIS** | * | **NO. 2020-CA-0248** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **BOH BROS. CONSTRUCTION** | * | |
| **CO., LLC AND ABC** | | **FOURTH CIRCUIT** |
| **INSURANCE COMPANY** | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-03303, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*
**ON REMAND FROM THE SUPREME COURT**
(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge Dale
N. Atkins)

**BELSOME, J., CONCURS IN THE RESULT**


Vanessa Motta
MOTTA LAW LLC
3632 Canal Street
New Orleans, LA 70119


      COUNSEL FOR PLAINTIFF/APPELLANT


Michael R.C. Riess
Michael D. Lane
RIESS LEMIEUX, LLC
1100 Poydras Street, Suite 1100
New Orleans, LA 70163


      COUNSEL FOR DEFENDANT/APPELLEE


           **REVERSED; REMANDED**
           **May 26, 2021**

This is a personal injury suit on remand from the Louisiana Supreme Court.

## FACTUAL BACKGROUND

The factual background in the case was set forth in *Harris v. Boh Bros. Constr. Co., LLC*, 20-0248, 2020 WL 8455801, at *1 (La. App. 4 Cir. 12/16/20):

> Boh Bros. entered into a contract with the United States Government Army Corps of Engineers (the "Corps") to work on the Southeast Louisiana Urban Flood Control Project (the "Project") in the uptown area of New Orleans, Louisiana. The Project was initiated by the Corps to address flooding in Southeast Louisiana. The Corps provided the plans and specifications for the Project. The contract provided that a concrete canal, which was comprised of a fifteen-feet deep box culvert, be built underneath Louisiana Avenue that spanned from Constance Street to South Claiborne Avenue. The walls of the culvert were to be lined with a steel retaining wall with a minimum height of three feet (36 inches) above the existing grade to give protection against falls into the culvert. According to Boh Bros., it installed the steel retaining wall at a height of 42 inches above the existing grade, exceeding the minimum requirement of 3 feet. Boh Bros. also contended that the specifications required a minimum of a six-foot chain-linked fence be built around the neutral ground of Louisiana Avenue.

> On the evening of April 8, 2016, Mr. Harris, who is legally blind, was in the New Orleans uptown area near Louisiana Avenue visiting his stepdaughter. After staying a few hours at his stepdaughter's house, Mr. Harris walked to a near-by store, assisted by a neighborhood friend. At some point, the friend left Mr. Harris at the store. The store was in a location where Mr. Harris was not required to cross the street to get to his stepdaughter's home.

1

The next morning, on April 9, 2016, Boh Bros.' personnel found Mr. Harris inside the fence, lying at the bottom of a box culvert located in the neutral ground on Louisiana Avenue between South Robertson Street and Freret Street. To enter the construction site in the area where Mr. Harris was found, Mr. Harris had to cross the street from his location at the store.

Mr. Harris suffered injuries as a result of his fall. Mr. Harris could not recall how he got into the culvert.[1]

## PROCEDURAL HISTORY

Mr. Harris filed a petition and an amended petition for damages against Boh Bros. Mr. Harris alleged Boh Bros. was negligent, asserting, in pertinent part: "Plaintiff was walking home, and walked through the unsecured construction site that was maintained by BOH BROS. CONSTRUCTION CO. L.L.C. when he fell fifteen (15) to twenty (20) feet at the premises. The accident caused personal injury to Plaintiff." In response, Boh Bros. answered the petition and pled affirmative defenses.[2]

---

[1] During his deposition, Mr. Harris explained:

> Q. So you don't have any memory at all from the steps in front of your [step]daughter's house until a week later in the hospital when you started asking what happened or why am I here?
> A. Yes.
> Q. Regarding the facts of this accident and the route you took, the sequence you took, you have no memory of any of that; correct?
> A. Yes.
> Q. You can't tell me any witnesses, you know, eyewitnesses to your accident or anything; right?
> A. See, I don't know that part.

[2] One of the affirmative defenses pled, which was later abandoned, was statutory contractor immunity, pursuant to La. R.S. 9:2771, which provides:

> No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by

Following, Boh Bros. moved for summary judgment, and for the first time asserted the affirmative defense of government contractor immunity, pursuant to *Boyle v. United Techs. Corp.*, 487 U.S. 500, 108 S.Ct. 2510 (1988) (hereinafter referred to as "*Boyle*").[3] In addition, Boh Bros. alleged that Mr. Harris could not prove the elements of breach of duty and causation as to his negligence claim.[4] The district court granted the motion for summary judgment as to these issues and provided written reasons.[5] From this judgment, Mr. Harris appealed.

This Court, after a *de novo* review, concluded that there were genuine issues of material facts remaining, which precluded summary judgment on both grounds. *Harris,* 20-0248, 2020 WL 8455801, *1.[6] Specifically, this Court determined that Boh Bros. failed to meet the first prong of *Boyle*—that the government approved of reasonably precise plans and specifications regarding the fencing surrounding the

the owner. The provisions of this Section shall not be subject to waiver by the contractor.

[3] In its motion for summary judgment, Boh Bros. abandoned the affirmative defense pursuant to La. R.S. 9:2771, and instead asserted immunity as a government contractor, citing *Boyle v. United Tech. Corp.,* 487 U.S. 500, 108 S.Ct. 2510 (1988). Mr. Harris failed to object in the district court to the arguments and evidence pertaining to this newly alleged affirmative defense. Consequently, we will consider this issue. *See* also, *DLJ of Louisiana # 1 v. Green Thumb, Inc.,* 376 So.2d 121,122 n.9 (La. 1979)(wherein the Supreme Court held that when a plaintiff fails to object to the introduction of evidence that bears on the affirmative defense, the pleadings have been considered to have been enlarged to include the affirmative defense, and the court can act as though the affirmative defense was pled).

[4] In its motion for summary judgment, Boh Bros. also asserted Mr. Harris' negligence was the sole and proximate cause of his injuries. The district court denied this ground for summary judgment. Boh Bros. did not seek review of that ruling.

[5] In its writ application to the Supreme Court, Boh Bros. references the district court's reasons for judgment to support its arguments. It is well settled that the district court's oral or written reasons for judgment form no part of the judgment and that appellate courts review judgments, not reasons for judgment. *Wooley v. Lucksinger*, 09-0571, 09-0584, 09-0585, 09-0586, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (citation omitted). *See also*, *Balthazar v. Hensley R. Lee Contracting, Inc.*, 16-0921, 16-0922, 16-0923, 16-924, 16-0925, 16-0926, 16-0927, 16-0928, p. 10 (La. App. 4 Cir. 3/15/17), 214 So.3d 1032, 1041 (quoting *S. Louisiana Ethanol L.L.C. v. CHS-SLE Land*, 14-0127, pp. 7-8 (La. App. 4 Cir. 2/4/15), 161 So.3d 83, 88)("[A] trial court's reasoning for granting a summary judgment may be informative, but it is not determinative of the issues to be resolved by the Court of Appeal.").

[6] Judge Belsome concurred in the result.

3

construction site. The record before this Court reflected that Boh Bros. *did not* submit with its motion for summary judgment a copy of the plans and specifications and/or contract approved by the Corps, regarding the fencing surrounding the construction site. *Id.*, 20-0248, 2020 WL 8455801, at *9. This Court pretermitted discussion of the other two prongs of the *Boyle* test. This Court also determined that Boh Bros. failed to show an absence of factual basis to support Mr. Harris' negligence claim, as there were genuine issues of material fact remaining. *Id.*, 20-0248, 2020 WL 8455801, at *11-12. As a result, this Court reversed the district court's January 10, 2020 judgment, and the matter was remanded to the district court for further proceedings. *Harris,* 20-0248, 2020 WL 8455801, at *12.[7] Boh Bros. sought review by the Supreme Court.

In its writ application to the Supreme Court, Boh Bros., for the first time, asserted that Mr. Harris made two judicial confessions: (1) the first prong of the *Boyle* test was met; and (2) the hazard was open and obvious. Boh Bros. urged that, as a result, it was relieved of proving the first prong of the *Boyle* test, and it owed no duty to Mr. Harris.

The Supreme Court, in a *per curium*, granted Boh Bros. relief, in part, writing:

> The court of appeal reversed, finding defendant failed to meet the first requirement of *Boyle*–that the government approve reasonably precise specifications. Specifically the court pointed to defendant's failure to submit a copy of the plans and specifications approved by the Army Corps of Engineers. However, *a filing* [Plaintiff's Supplemental and Amending Motion in Opposition to Defendant's Motion for Summary Judgment] *before the trial court*

---

[7] On appeal, Mr. Harris asserted that the district court erred in granting Boh Bros.' request to strike the video and exhibits 3 and 8, which were photographs attached to Mr. Harris' opposition to summary judgment, and this Court found no error in the district court's ruling. *See Harris*, 20-0248, 2020 WL 8455801, *1.

indicated the "Plaintiff does not dispute the first prong of the Affirmative Defense of Governmental Contractor Immunity applies. Thus, there is no need to discuss that issue as clearly the government approved the specifications."

An admission by a party in a judicial proceeding is a judicial confession and is full proof against the party making it. La. Civ. Code art. 1853; *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 2003-1003, (La. 12/3/03), 861 So.2d 156, 159. This admission "has the effect of waiving evidence as to the subject of the admission–of withdrawing the subject matter of the confession from issue." *Cichirillo v. Avondale Indus., Inc.*, 2004-2894, (La. 11/29/05), 917 So.2d 424, 429 (citing *Cheatham v. City of New Orleans*, 378 So.2d 369, 375 (La. 1979)). Plaintiff's admission removed the first requirement of *Boyle* from issue. The court of appeal erred in denying defendant immunity on this ground.

[W]e remand to the court of appeal to complete its review of defendant's government contractor immunity claim.

*Harris v. Boh Bros. Constr. Co.*, 21-00084, pp. 2-3 (La. 3/16/21), 312 So.3d 565, 566-67 (emphasis added).[8]  Justice Griffin dissented, and Justice Genovese wrote that he would deny the writ and allow the matter to go to trial, explaining in part:

I must say that I am intrigued and perplexed at defendant's "open hazard" defense. Defendant claims that a risk is not unreasonable if it is open and obvious, citing jurisprudence in support of its theory. Query: How can a completely blind person be subjected to the "open and obvious" test?

I find the court of appeal decision was correct and would deny this writ for two reasons: first, there are genuine issues of material fact as to defendant's entitlement to immunity; and second, a completely blind man cannot be held to the "open and obvious" legal concept because he is completely blind and can neither see nor discern an open and obvious hazard.

---

[8] It is undisputed that Boh Bros. did not submit with its motion for summary judgment the plans and specifications and/or the contract containing the plans and specifications that were approved by the Corps, regarding the fencing surrounding the construction site.  In addition, neither the parties on appeal, nor the district court in its judgment, discussed the judicial confessions by Mr. Harris.  To the contrary, Boh Bros.' argued in its brief to this Court, referencing Cameron Johnson's affidavit and the federal district court case *Guarisco v. Boh Bros. Constr. Co., LLC*, No. CV 18-7514, 2019 WL 1487505, at *5 (E.D. La. Apr. 4, 2019), that the district court correctly ruled that Boh Bros., satisfied the first prong of the *Boyle* test. In addition, Boh Bros. argued the hazard was open and obvious.

*Harris*, 21-00084, pp. 1-2, 312 So.3d at 567.

## DISCUSSION

On remand, we address Mr. Harris' assigned error that the district court erred in granting summary judgment in favor of Boh Bros. For the reasons set forth below, we conclude, after our *de novo* review, that there are genuine issues of material fact remaining, which preclude summary judgment as a matter of law on the issues of government contractor immunity and negligence.

**Summary judgment law**

In *Filmore Parc Apartments II v. Foster*, 18-0359, 2018 WL 5830453, at *6 (La. App. 4 Cir. 11/7/18)(footnote omitted), this Court explained, in pertinent part:

> "A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by the litigant." *Tate v. Touro Infirmary*, 17-0714, p. 1 (La. App. 4 Cir. 2/21/18), —— So.3d ——, ——, 2018 WL 992322, *writ denied*, 18-0558 (La. 6/15/18), 245 So.3d 1027 (citing La. C.C.P. art. 966(A)(1)). Generally, the burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). An appellate court's standard of review for a grant of a summary judgment is *de novo*, and it employs the same criteria district courts consider when determining if a summary judgment is proper. *Madere v. Collins*, 17-0723, p. 6 (La. App. 4 Cir. 3/28/18), 241 So.3d 1143, 1147 (citing *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418, p. 25 (La. 7/10/06), 935 So.2d 669, 686). In *Chanthasalo v. Deshotel*, 17-0521, p. 5 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107 (quoting *Ducote v. Boleware*, 15-0764, p. 6 (La. App. 4 Cir. 2/17/16), 216 So.3d 934, 939, *writ denied*, 16-0636 (La. 5/20/16), 191 So.3d 1071), this Court explained:
>
> > This [*de novo*] standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which

6

reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.

On a motion for summary judgment, the burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). If the moving party will not bear the burden of proof at trial, the moving party must point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. La. C.C.P. art. 966(D)(1). However, the moving party cannot simply file a motion for summary judgment that lacks proper support and rely on the fact that the opposing party will bear the burden of proof at trial. *See Berard v. Home State Cty. Mut. Ins. Co.*, 11-1372, p. 4 (La. App. 3 Cir. 5/9/12), 89 So.3d 470, 472. Once the moving party has met its burden on summary judgment, the adverse party must produce factual support sufficient to establish that he/she will be able to satisfy his/her evidentiary burden of proof at trial. *Davis v. A Bar & Grill with a Bite, Inc.*, 19-1928, p. 2 (La. 3/16/20), 294 So.3d 1051, 1052.

Instructively, La. C.C.P. art. 966(A)(3) and (4) provide:

(3) After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.

(4) The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. The court may permit documents to be filed in any electronically stored format authorized by court rules or approved by the clerk of the court.

7

Supporting affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." La. C.C.P. art. 967(A). In *Capital One Bank (USA), NA v. Sanches*, 13-0003, p. 6 (La. App. 4 Cir. 6/12/13), 119 So.3d 870, 873-74, this Court explained in pertinent part:

> "[I]t is insufficient for an affiant to merely declare that he has "personal knowledge" of a certain fact. The affidavit must affirmatively establish that the affiant is competent to testify to the matters stated by a factual averment showing how he came by such knowledge." *THH Properties Ltd. P'ship v. Hill*, 41,038, p. 7 (La. App. 2 Cir. 6/2/06), 930 So.2d 1214, 1219 (*citing Express Pub. Co., Inc. v. Giani Inv. Co., Inc.*, 449 So.2d 145 (La. App. 4 Cir. 1984)). "Personal knowledge means something which a witness actually saw or heard, as distinguished from something a witness learned from some other person or source." *Id.* (citations omitted). Furthermore, "'personal knowledge' encompasses only those facts which the affiant saw, heard or perceived with his own senses." *Express Pub. Co., Inc.*, 449 So.2d at 147 (*citing Atkinson v. Allstate Ins. Co.*, 361 So.2d 32 (La. App. 3 Cir.1978)).

Mere conclusory allegations, improbable inferences and unsupported speculation cannot support a summary judgment, even if contained in an affidavit. *Sears v. Home Depot, USA, Inc.*, 06-0201, p. 12 (La. App. 4 Cir. 10/18/06), 943 So.2d 1219, 1228 (citation omitted).

**Evidence submitted by the parties**

In support of its motion for summary judgment, Boh Bros. attached the following:

1. Affidavit of Cameron Johnson ("Mr. Johnson"), project manager for Boh Bros. (pertinent excerpts of his affidavit will be discussed *infra*.);

2. excerpt of the specifications and plans of the Project for the retaining wall that surrounded the culvert;

3. photograph of the retaining wall;

4. photograph of the chain-linked fence;

5. deposition of Mr. Harris;

6. affidavit of Troy Miceli, the investigator hired by Boh Bros. to investigate Mr. Harris' accident;

7. deposition of Shirley Morgan, sister and caregiver of Mr. Harris; and

8. video of Mrs. Morgan and Mr. Harris recorded by Mr. Miceli, depicting Mrs. Morgan speaking to a third party and stating that someone pushed Mr. Harris into the culvert or he fell, "we don't know."

In support of his opposition, Mr. Harris attached the following:

1. Excerpt of minutes labeled by Mr. Harris as "Corp[s] Administrative Contracting Minutes of August 4, 2014" wherein fencing was discussed: "Mr. Fogarty continued on with the agenda: Safety and Security Fencing; 6 foot chain-link fence around work areas. Four foot fencing will not prevent on lookers from passing over. Emphasis was made for chain-link fencing on all work areas";

2. excerpt of Boh Bros.' responses to first set of interrogatories and requests for production of documents, which will be discussed *infra*.

3. Boh Bros.' response to second set of requests for admissions;

4. excerpt of an "Inspection Completion Report" prepared by Brett Carbo, the safety project manager for Boh Bros., dated April 4, 2016, which states under "List of issues," "Is housekeeping being maintained and kept up? . . . fence not closed";

5. excerpt of an "Inspection Completion Report" prepared by Mr. Carbo, dated April 6, 2016, which provided under daily safety log questions "[i]s daily housekeeping being maintained and kept up?" and the response marked is "Yes"; and

6. photograph marked as exhibit 5 with the caption "Brett Carbo 4/9/2016 9:56 AM - Louisiana Ave" depicting "Access point" into the construction site through the fence.

With the applicable summary judgment law and evidence presented in support and in opposition to Boh Bros.' motion for summary judgment in mind, we turn to Mr. Harris' assigned error.

**Government contractor immunity**

Mr. Harris asserts the district court erred in granting Boh Bros.' motion for summary judgment, arguing Boh Bros. failed to prove the affirmative defense of government contractor immunity.

*The Boyle test*

In *Banks v. Par. of Jefferson*, 12-215, p. 22 (La. App. 5 Cir. 1/30/13), 108 So.3d 1208, 1222, the appellate court addressed the factors—referred to as the *Boyle* test—a defendant must prove to succeed in establishing government contractor immunity:

> The government contractor immunity defense provides that contractors hired by the government cannot be held liable for performing their contracts in conformity with specifications established by the government. *Hercules, Inc. v. United States,* 516 U.S. 417, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996), and *Boyle v. United Tech. Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). In order for a contractor to assert the government contractor defense, three prongs must be met: (1) the government must have approved reasonably precise specifications; (2) the work must have conformed to the specifications; and (3) the contractor must have warned of any dangers that were known to the contractor, but not the government. The contractor is not required to warn of dangers which it should have known, only dangers about which it had actual knowledge. *Kerstetter v. Pacific Scientific Company,* 210 F.3d 431 (5th Cir. 2000).

However, the *Boyle* test only protects a government contractor from liability for defective designs "if discretion over the design feature in question was exercised by the government." *Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1486 (5th Cir. 1989). The *Trevino* Court explained that "[i]f the government delegates its design discretion to the contractor and allows the contractor to develop the design, the government contractor defense does not apply." *Id.* If the government delegated discretion to the contractor, there must be

substantive review and evaluation of the contractor's design choices. *Id*. "A mere rubber stamp by a federal procurement officer does not constitute approval and does not give rise to the government contractor defense." *Id*.

*Guarisco v. Boh Bros. Constr. Co., LLC*

Boh Bros. points out that the federal district court in *Guarisco v. Boh Bros. Constr. Co., LLC*, No. CV 18-7514, 2019 WL 1487505, at \*5 (E.D. La. Apr. 4, 2019)(referred to as hereinafter "*Guarisco*"), found it was entitled to government contractor immunity. In *Guarisco*, a plaintiff brought a tort action against Boh Bros. in Orleans Parish Civil District Court. The plaintiff was involved in an automobile accident at the intersection of Louisiana Avenue and Baronne Street in New Orleans, where Boh Bros. was working on the same Project as in this case. Boh Bros. asserted government (federal) contractor immunity and timely removed the case to federal court under Title 28 U.S.C, "Federal Officer Removal Jurisdiction." The plaintiff alleged Boh Bros. was negligent when it "converted Louisiana Avenue's two river-bound lanes into a two-way street and negligently placed traffic control signs on the roadbed at the intersection, thereby causing the plaintiff's accident." *Id*., No. CV 18-7514, 2019 WL 1487505, at \*1. At issue, was whether Boh Bros. was entitled to removal to federal court, rather than the merits of its claim of government contractor immunity. After reviewing the prongs of the *Boyle* test, the federal district court concluded Boh Bros. established government contractor immunity, thus, removal to federal court was proper. *Id*., No. CV 18-7514, 2019 WL 1487505, at \*6.

The plaintiff alleged that Boh Bros. failed to produce evidence to show that the traffic control system, which was the alleged defective product feature at issue,

11

was at the direction of or mandated by the federal government, and its post-accident actions to correct the traffic control operation show that Boh Bros. either "was not acting under the direction of a federal officer or failed to follow the directions and mandates of that federal officer on the date of the accident." *Guarisco*, No. CV 18-7514, 2019 WL 1487505, at \*2. The *Guarisco* court held that Boh Bros. met the first prong of the *Boyle* test, proving, with the evidence submitted, that the plans and specifications from the Corps—governing traffic control and coordination—were reasonably precise and approved by the Corps, opining:

> In the instant case, the affidavit of Defendant's Project Manager, Cameron Johnson, indicates that "[t]he plans and specifications administered by [the Corps] were reasonably precise." (Rec. Doc. 16-1 at 2). This attestation is supported by evidence that Defendant's contract with the Corps contains 710 pages of detailed specifications prepared by the Corps' selected design engineering firm, as well as 430 pages of detailed drawings or plans also prepared by the designer. (Rec. Doc. 9 at 13). Additionally, Defendant produced the portion of its contract with the Corps governing traffic control and coordination. (See Rec. Doc. 9-1). This document outlines detailed specifications pertaining to traffic control and coordination, submittals, the Traffic Control Device Plan, and road closure, as well as the use of barricades, danger, warning, and detour signs.

*Id.*, No. CV 18-7514, 2019 WL 1487505, at \*6.

As to the second prong of the *Boyle* test, requiring a government contractor to have performed the work in accordance with the approved specifications, the *Guarisco* court found that "[c]onformity may be satisfied by proof that 'the government supervised and controlled the implementation of [the government approved reasonably precise] specifications,'" *Id.*, No. CV 18-7514, 2019 WL 1487505, at \*6 (quoting *Levy v. Phillips and Jordan, Inc.*, No. 08-5065, 2009 WL 2922057, at \*2 (E.D. La. Sept. 9, 2009)). In *Guarisco*, Boh Bros. submitted Mr.

Johnson's affidavit which indicated that the Corps engaged in extensive oversight of the Project by maintaining a daily presence onsite and providing a Quality Assurance representative to inspect Boh Bros.' work each day to ensure conformity with the plans, specifications, and Corps-approved submittals. The court explained that "[t]hese monitoring efforts not only lessen the concern that Defendant used its own discretion in lieu of the Corps' reasonably precise specifications, but also constitute persuasive evidence of conformity . . . ." *Id.* Mr. Johnson also attested that the Corps "'expressly approved all traffic-related submittals and modifications to the [Traffic Control Device Plan] implemented by [Defendant] on the Project.'" No. CV 18-7514, 2019 WL 1487505, at *22.

As to the third prong of *Boyle*, the *Guarisco* court found it was met. The court noted that Boh Bros. emphasized "that the Corps' knowledge of the risks is bolstered by the fact that the Louisiana Avenue Project was the last of seven SELA projects that the Corps had completed in Uptown New Orleans." Also, Mr. Johnson attested that "[Boh Bros.] did not know of any dangers relating to the traffic control and coordination plans, specifications, or [Corps-approved] submittals that were not known to [the Corps]." *Id.*, No. CV 18-7514, 2019 WL 1487505, at *23.

Unlike the federal district court in *Guarisco*, this Court does not have the benefit of reviewing the plans and specifications of the alleged defective product feature—the fence surrounding the construction site—in reviewing prongs two and three of the *Boyle* test. In addition, while *Guarisco* may be instructive, it is not binding on this Court. Furthermore, as noted in *Harris*, 2020 WL 8455801, at *1, each case has to be independently evaluated under the *Boyle* test to determine if the contractor is entitled to immunity.

13

*Application of the Boyle test to the case sub judice*

As to the first prong, the Supreme Court found that this factor was judicially confessed by Mr. Harris; thus, it was satisfied.

As to the second prong, Mr. Harris argued that Boh Bros. did not follow the plans and specifications of the contract regarding the fencing surrounding the construction site. Specifically, Mr. Harris asserted that Boh Bros. "failed to secure the temporary fence with metal ties and failed to close and secure the site when work was finished at the end of the day by fastening together by insertion a metal rod at the foot of each fence panel."

As the movers for the summary judgment, Boh Bros. had to prove the alleged defective product feature—the fence surrounding the construction site—conformed to the plans and specifications given to it by the government.[9]  In support of this factor, Boh Bros. submitted the affidavit of Mr. Johnson.  At the beginning of the affidavit, Mr. Johnson stated that "I have personal knowledge of the matters set forth in this Affidavit and [I] am competent to testify to the matters stated herein." He proceeded to attest that the "Contract includes detailed specifications regarding . . . the installation of a safety fence around the construction area." He continued, "the entire neutral ground on Louisiana Ave. was cordoned off as a restricted construction area and surrounded by a zinc coated, chain-link safety fence that was a minimum of six feet tall, as required by the Project plans and specifications (footnote omitted)." Mr. Johnson described the fencing as follows:

---

[9] Based on the facts and theory of the case that has evolved with discovery and asserted by Mr. Harris—fault pursuant to La. C.C. art. 2315— a question arises whether this case involves an alleged "defective product feature." However, since that is the basis of the summary judgment and the remand by the Supreme Court, we address Boh Bros.' claim of government contractor immunity.

21. Each panel of the chain-link fence was secured to the adjacent panels with metal ties that tightly bound each panel of the chain-link fence to one another (footnote omitted).

22. In addition, each fence panel was additionally fastened to the adjacent panels by insertion of the hollow metal end poles over vertical metal rods on the panel stands, which tightly secured the fence panels together.

Mr. Johnson explained that "[w]arning signs stating, 'DANGER, CONSTRUCTION AREA, KEEP OUT,' were affixed to the chain-link fence every 100 feet, as required by the Project plans and specifications (footnote omitted)." Mr. Johnson continued stating, "Boh Bros. fully complied with the plans, specifications, and submittals (which were substantively reviewed and approved by [Corps]), including but not limited to those plans, specifications, and submittals relating to . . . the installation and maintenance of a chain-link safety fence surround the construction area . . . ."

In addition, Mr. Johnson attested:

33. Boh Bros. fully inspected the construction site where the accident occurred before leaving the site at the end of the day on April 8, 2016.

34. When Boh Bros. left the site on April 8, 2016, the chain-linked fence surrounding the construction area was properly closed and securely bound shut with metal ties that bound each panel of the chain-linked fence to the adjacent panels, leaving no opening for entry.

35. Each fence panel was additionally fastened to the adjacent panels by insertion of hollow metal poles over the metal vertical rods on the panel stands, which tightly secured the panels together, as confirmed by inspection conducted at the end of the day on April 8, 2016.

In its opposition to the summary judgment, Mr. Harris submitted excerpts of Boh Bros.' response to interrogatories:

**INTERROGATORY NO. 3:**

Please identify the persons known to you that were supposed to make sure that the work site to which Boh Bros[.] Construction was doing work on Louisiana Avenue was secured, locked and/or closed where Mr. Harris claims to have fallen.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the individuals identified in the preceding response,[10] the U.S. Army Corps of Engineers ("Corps") retained Quality Assurance ("QA") representatives who were on the site each day to inspect, oversee, and document the work. Lloyd Bradshaw and Perry Damico served as the Corps' QA [Quality Assurance] representatives on the Project in April 2016.

**INTERROGATORY NO. 4:**

Please state in detail Boh Bros[.] Construction policies and/or procedures for its employees to follow when securing the work site on Louisiana Avenue.

**RESPONSE TO INTERROGATORY NO. 4;**

It is each foreman's responsibility to close and secure their work areas on the Project each day. **Although not mandated by the contract,** closing and securing the site when work is finished at a location or for the day typically includes wire tying the fence posts ends with metal wire. Fence panels are also fastened together by insertion of a metal rod at the foot of each fence panel into the adjoining panel. Boh Bros[.], also frequently conducted a Job Safety Analysis ("JSA") to ensure all safety protocols were adhered to, which identified any potential hazards and an action plan to remedy them. In addition, the site was regularly inspected by Boh Bros[.], and Corps personnel for compliance with all Project requirements, including safety and security. Boh Bros[.], complied with the Project's plans and specifications at all times, including prior to the incident on April 9, 2016 . . . . (emphasis added).

Moreover, Mr. Harris submitted two inspection reports from Bret Carbo. One dated April 4, 2016, stated that "fence not closed" and one dated April 6, 2016, stated "when excavation not in use, we should put some type of barrier to stop people from walking into excavation."

After reviewing the evidence filed in support and in opposition to the summary judgment, we conclude there are genuine issues of material fact as to

---

[10] This response is not in the appellate record.

whether the fencing conformed to the Corps' plans and specifications. In its brief to this Court, Boh Bros. wrote, referencing the above admission in interrogatory no. 4: "Appellant cites nothing in the Contract or the Project specifications that mandated or required Boh Bros., to use metal ties, which were utilized by Boh Bros, as an additional safety measure beyond Boh Bros.' contractual requirement." In addition, Mr. Johnson attested that, near where Mr. Harris was found in the culvert, "the metal ties which secured one panel of the chain-link fence to the adjacent panel had been removed and the panel lifted off the stand, creating an opening in the fence that was just wide enough for a person to squeeze through (footnote omitted)." Mr. Johnson continued, "[w]hen Boh Bros. left the site on April 8, 2016, the chain-linked fence surrounding the construction area was properly closed and securely bound shut . . . leaving no opening for entry." However, he did not attest that he personally inspected the site or was present when the site was inspected on April 8, 2016. Moreover, despite Boh Bros. identifying, in its response to Mr. Harris' interrogatories, the persons at the construction site that were responsible to make sure the fencing was secured, locked and/or closed, affidavits of these individuals were not submitted by Boh Bros. No inspection report from the Corps or Mr. Carbo from April 8, 2016, was submitted by either party. No video recording, allegedly taken in the morning and evening of April 8, 2016, depicting that the Project was secure, was submitted, although it was referenced at the hearing on the motion for summary judgment by counsel for Boh Bros. This evidence, along with the Court's inability to review the plans and specifications for the fence, raises genuine issues of material fact as to second prong of the *Boyle* test. As Boh Bros. failed to prove it was entitled to

17

summary judgment as to this prong of the *Boyle* test, the burden did not shift to Mr. Harris.

The third prong of the *Boyle* test is whether the contractor warned the government about the dangers of the alleged defective equipment that were known to the contractor but not to the government. Counsel for Mr. Harris argued it was an "open and obvious hazard, Boh Bros. knew of the hazard and failed to warn the government of the hazard." Counsel for Mr. Harris asserted that the inspection reports showed that Boh Bros. "knew and *had actual knowledge* that their temporary fencing was not being closed and was a continuous issue for pedestrians such as Plaintiff." Counsel for Mr. Harris continued, "there is no question that an open and obvious hazard existed and [Boh Bros.] failed to follow the specifications of the [Corps] by securing the fence panels with metal ties."

On the other hand, Boh Bros. asserted:

> As set forth in the Affidavit of Boh Bros.' Project Manager, Boh Bros., did not know of any dangers relating to the plans, specifications, or [Corps]-approved submittals that were not known to [Corps].[11]

> Moreover, as confirmed by the *Guarisco* court, the government knew of the risks associated with the Project construction activities, including the risks associated with implementation of the traffic control measures necessitated by the Project. Experience was on [the Corps'] side, as this Project is the last of seven SELA projects that [the Corps] completed in the Uptown New Orleans area. Based on the government's knowledge of the risks. Boh Bros., has satisfied the final prong of the government contractor defense. (internal footnotes omitted).

However, the alleged defective product feature in *Guarisco* was the traffic control system, and what the Corps knew in *Guarisco* is not conclusive as to its knowledge

---

[11] Mr. Johnson attested that "Boh Bros. does not know of any dangers relating to the Project plans and specifications or the [Corps]-approved submittals that are not known to the [Corps]."

18

in the present case. In addition, having found that genuine issues of fact remain as to the second prong, the third prong cannot be resolved.

After our *de novo* review, we conclude that genuine issues of material fact remain as to the second prong of the *Boyle* test, and Boh Bros. failed to prove it was entitled to summary judgment on the ground of government contractor immunity as a matter of law.

***Negligence pursuant to La. C.C. art. 2315[12]***

In its motion for summary judgment, Boh Bros. asserted, and the district court agreed, Mr. Harris could not show it breached any duty owed to Mr. Harris, and Mr. Harris could not sustain his burden of proof as to causation.[13] As noted *supra*, in its writ to the Supreme Court, Boh Bros. asserted that Mr. Harris judicially confessed that the hazard was open and obvious.

Mr. Harris grounded his case on the assertion that Boh Bros. breached a duty of care owed to him, by failing to secure the fencing surrounding the construction site. The theory of negligence asserted by Mr. Harris, which Boh Bros. agrees,[14] is that of fault derived from La. C.C. art. 2315(A) which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it

---

[12] We note the Supreme Court did not instruct this Court to revisit the negligence claim; however, in light of Boh Bros.' assertion that Mr. Harris judicially confessed it was an open and obvious hazard, we address this issue.

[13] In his brief to this Court, Mr. Harris does not address the finding by the district court that Mr. Harris failed to prove a breach of duty by Boh Bros. and causation. Because the district court based the granting of the summary judgment on two separate grounds—government contractor immunity and negligence—both must be addressed. As this Court is reviewing the matter *de novo*, we ask the same questions as the trial court in determining whether summary judgment is appropriate, *i.e.*, "whether any genuine issues of material fact exist, and whether the mover is entitled to judgment as matter of law." *Cressionnie v. Liberty Mut. Ins. Co.*, 98-0534, p. 3 (La. App. 4 Cir. 4/8/98), 711 So.2d 364, 366 (citing La. C.C.P. art. 966(B)).

[14] In its brief to this Court, Boh Bros. wrote, "Appellant's lawsuit is based in negligence under Louisiana Civil Code Article 2315."

happened to repair it." In *Chanthasalo v. Deshotel*, 17-0521, p. 6 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107-08, this Court explained:

> Established Louisiana jurisprudence employs a duty-risk analysis to resolve negligence claims under La. C.C. art. 2315. *Roberts v. Benoit*, 605 So.2d 1032, 1041 (La. 1991). To prevail under a negligence claim, the plaintiff must prove five elements:
>
> > (1) the defendant had a duty to conform his conduct to a specific standard (the duty element);
> >
> > (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element);
> >
> > (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
> >
> > (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and
> >
> > (5) actual damages (the damages element)[.]
>
> *Roberts*, 605 So.2d at 1051.

*Duty-Risk analysis*

At trial, Mr. Harris would have the burden to prove his negligence claim against Boh Bros. Thus, for Boh Bros. to prevail on summary judgment, Boh Bros. was required to show an absence of factual support for any of the following elements of Mr. Harris' negligence cause of action.

The first element, the duty element, "is a question of law; the inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Faulkner v. The McCarty Corp.*, 02-1337, p. 2 (La. App. 4 Cir. 6/11/03), 853 So.2d 24, 27 (quoting *Perkins v. Entergy Corp.*, 98-2081, p. 22 (La. App. 1 Cir. 12/28/99), 756 So.2d 388, 403). In addition, a duty may arise from the nature of

20

the undertaking, or by contract. 2 La. Prac. Pers. Inj. § 12:25.[15]   Mr. Johnson attested "the entire neutral ground on Louisiana Ave. was cordoned off as a restricted construction area and surrounded by a zinc coated, chain-link safety fence that was a minimum of six feet tall, as required by the Project plans and specifications (footnote omitted)."  Consequently, we find Boh Bros. had a duty to Mr. Harris, a third party, to maintain a secure fence surrounding the construction site.

The second element, the inquiry is whether there was a breach of the duty, which is a question of fact or a mixed question of law and fact.  *Magri v. Jazz Casino Co., L.L.C.*, 19-0064, p. 7 (La. App. 4 Cir. 6/26/19), 275 So.3d 352, 358, *writ denied*, 19-01197 (La. 10/15/19), 280 So.3d 611.   Making sure the fencing was secured, and that there were no openings in the fencing surrounding the construction site was a precaution a reasonable person would take.[16]   Mr. Johnson attested in his affidavit that, after Boh Bros.' personnel found Mr. Harris in the culvert, they inspected the area to determine the possible entry point by Mr. Harris.  Mr. Johnson continued:

> Near the location where Plaintiff was found, Boh Bros. discovered a point of entry in the safety fence located on the downtown side of Louisiana Ave. Specifically, the metal ties of one of the panels of the chain-linked fence had been removed, and the panel lifted to create an opening wide enough for a person to squeeze through the fence.

---

[15]   Embodied in the defense of government contractor immunity is the premise that a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations.  *Cf, Banks*, 12-215, p. 16, 108 So.3d at 1218 (referencing statutory contractor immunity of La. R.S. 9:2771).

[16] Because Mr. Harris' theory of negligence is based in fault, pursuant to La. C.C. art. 2315, not premises liability under La. C.C. arts. 2317 and 2317.1, we reject Boh Bros.' insistence that the risk-utility balance test is applicable in this case.

Despite Boh Bros.' personnel finding the opening in the fence near where Mr. Harris was found, Mr. Johnson attested that on the day of the accident, the safety fence was properly maintained and closed, as discussed *supra*. However, Mr. Johnson did not attest that he conducted this inspection, or he was present for the inspection. Boh Bros. failed to offer any evidence in support of its summary judgment in the form of personal knowledge that on April 8, 2016, the fence was properly maintained and secured. Thus, Boh Bros. failed to establish an absence of factual support for this element.

Turning to Boh Bros.' assertion that the complained of hazard was open and obvious to all, we note that "a defendant generally does not have a duty to protect against an open and obvious hazard." *Jones v. Stewart*, 16-0329, p. 13 (La. App. 4 Cir. 10/5/16), 203 So.3d 384, 392 (quoting *Scarberry vs. Entergy Corp*, 13-0214, p. 10, (La. App. 4 Cir. 2/19/14), 136 So.3d 194, 204). "In order for a hazard to be considered open and obvious, the Supreme Court has consistently stated the hazard should be one that is open and obvious to all, i.e., everyone who may potentially encounter it." *Id.*

Boh Bros. asserted, in its writ application to the Supreme Court, that Mr. Harris made a judicial confession that the hazard was open and obvious to all;[17] thus, conceding Boh Bros. owed no duty to Mr. Harris. We find Boh Bros.' argument disingenuous. Mr. Harris' reference to the "open and obvious to all" was in the context of the third prong of the *Boyle* test—that it was an "open and

---

[17] We note in its answer, Boh Bros. asserted Mr. Harris' claims were barred by his own negligence in that he failed to see "what should reasonably be seen," and in its motion for summary judgment, and on appeal, Boh Bros. argued that the hazard was open and obvious to the general public.

obvious hazard, Boh Bros. knew of the hazard and failed to warn the *government* of the hazard (emphasis added)."

Notwithstanding Boh Bros.' assertion that counsel for Mr. Harris was arguing that the hazard was open and obvious to all, we find the open and obvious to all defense would be inapplicable on two grounds. First, as noted *supra*, this case involves a negligence action under La. C.C. art. 2315, not premises liability. *Scarberry*, 136 So.3d 194, is instructive on this issue. In *Scarberry*, an out of state electrical lineman, who was electrocuted by a downed power line, filed suit for personal injury damages against Entergy. The trial court found in favor of the lineman. On appeal, as one of the assigned errors, Entergy argued that a *de novo* review of the personal injury case was mandated, because the trial judge refused to read its proffered jury instructions regarding hazards that are open and obvious. This Court found the claim lacked merit, writing in pertinent part:

> We do not find that the trial judge's refusal in this case to instruct the jury as to the open and obvious to all defense was erroneous because this specific inquiry was inapplicable to the issues to be resolved by the jury. The record shows that Mr. Scarberry grounded his case to the jury on the assertion that Entergy's employees breached duties of care owed to him . . . . Indeed, the trial judge did not read instructions concerning strict liability, liability for hazardous things under one's control, or the duty to warn of hazardous things. Moreover, the jury was not asked via interrogatories to determine whether the electrical line that struck Mr. Scarberry was defective and/or created an unreasonable risk of harm. Rather, the jury was asked to determine whether Entergy was negligent and whether such negligence was a cause-in-fact of Mr. Scarberry's injuries . . . . In this case, the trial judge's refusal to instruct the jury as to Louisiana's open and obvious to all inquiry was correct because it was inapplicable to the issues to be resolved by the jury.

*Id.*, 13-0214, p. 13, 136 So.3d at 205-06 (footnote omitted). As in *Scarberry*, based on the facts and theory of the case that have evolved and were asserted by Mr. Harris, the issue is not whether the fencing was defective and/or created an

unreasonable risk of harm, but rather if Boh Bros. breached its duty of care by failing to secure the fencing surrounding the construction site. Second, even assuming the open and obvious defense to all should be applied in this case, we conclude this defense is not germane, because this case involves "case-specific factual issues." This Court in *Jones*, citing *Jimenez v. Omni Royal Orleans Hotel*, 10-1647, pp. 11-12 (La. App. 4 Cir. 5/18/11), 66 So.3d 528, 534-35,[18] explained that "despite the presence of an open and obvious condition, the jurisprudence has recognized that 'case-specific factual issues' may preclude summary judgment.'" *Jones*, 16-0329, p. 23, 203 So.3d at 398. As noted by Justice Genovese in his dissent in *Harris*, 21-00084, 2021 WL 973037, *1, "Defendant claims that a risk is not unreasonable if it is open and obvious . . . Query: How can a completely blind person be subjected to the "open and obvious" test?" Justice Genovese continued: "[A] completely blind man cannot be held to the 'open and obvious' legal concept because he is completely blind and can neither see nor discern an open and obvious hazard." *Id*. We agree, and conclude that this case falls into the category involving "case-specific factual issues," precluding summary judgment as a matter of law as to the open and obvious to all defense.

The third element, causation or the cause-in-fact element, is a question of fact, subject to the manifest error standard of review. *Hammond v. Rahsaana*, 13-1202, p. 7 (La. App. 4 Cir. 2/26/14), 135 So.3d 1207, 1211 (citation omitted). In determining causation, courts look to "whether the conduct was a substantial factor leading to the accident, *i.e.,* whether it had a direct relationship to the accident . . .

---

[18] In *Jimenez*, 10-1647, p. 11, 66 So.3d at 534, this Court explained that "[t]here are other decisions which suggest that simply because a condition may be open and obvious it does not *necessarily* result in a consequential finding that the defendant did not create an unreasonable risk of harm."

24

." *Miller v. Fields*, 570 So.2d 39, 42 (La. App. 4ᵗʰ Cir. 1990)(citation omitted). As to this element, in its brief to this Court, Boh Bros. asserts, in pertinent part:

> Appellant, in fact, has provided no evidence of *anything* that Boh Bros[.], did wrong to cause or contribute to the accident. Boh Bros., on the other hand, has submitted the Sworn Affidavit of its Project Manager, Cameron Johnson, confirming that Boh Bros[.], properly closed and secured the chain-link safety fence before leaving the construction site on Friday, April 8, 2016. It is incumbent upon Appellant to come forward with evidence showing that Boh Bros[.], was the legal cause of Appellant's injuries.

Despite its assertion that the fence was secured before personnel left the site on April 8, 2016, Boh Bros. failed to present evidence to show personal knowledge that the fence was properly maintained and secured on April 8, 2016. As a result, we conclude Boh Bros. failed to prove an absence of factual support for the element of causation.[19]

The fourth element, the legal causation or scope of duty inquiry, "assumes a duty exists and questions whether the injury the plaintiff suffered is one of the risks encompassed by the rule of law that imposed the duty." *Chaisson v. Avondale Indus., Inc.,* 05-1511, p. 24 (La. App. 4 Cir. 12/20/06), 947 So.2d 171, 188 (quoting *Roberts v. Benoit,* 605 So.2d 1032, 1044 (La. 1991)). It is a mixed question of law and fact. *Chatman v. S. Univ. at New Orleans*, 15-1179, p. 11 (La. App. 4 Cir. 7/6/16), 197 So.3d 366, 375 (citation omitted). In its brief to this Court, Boh Bros. argues that "the scope of the duty owed by Boh Bros, to the public did not encompass the risk that resulted in Appellant's injuries." In *Chatman*, this Court explained that "[t]he extent of protection owed to a particular

---

[19] *See Miller v. Fields*, 570 So.2d 39 (La. App. 4ᵗʰ Cir. 1990), (wherein this Court, in reviewing the elements of negligence in an action where the survivors of a pedestrian that was struck and killed by vehicle on an interstate highway service road brought an action against Department of Transportation and Development (DOTD), alleging that DOTD was liable by virtue of gap in the fencing that controlled access to interstate, through which the pedestrian had allegedly passed, found the gap in the fence may have been cause-in-fact of the accident).

plaintiff is determined on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms." *Id*, 15-1179, p. 19, 197 So.3d at 379 (citation omitted). "In determining the limitation to be placed on liability for a defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to the plaintiff can be associated with the duty sought to be enforced." *Id*. (citing *Faucheaux v. Terrebonne Consol. Gov't,* 615 So.2d 289, 294 (La. 1993)). The factfinder should ask, "'[i]s the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant?'" *Chaisson*, 05-1511, p. 24, 947 So.2d at 188 (quoting *Roberts*, 605 So.2d at 1032). A *de novo* review reflects that Boh Bros. failed to prove an absence of factual support that Mr. Harris' injuries were not easily associated with the duty to sought to be enforced, *i.e.*, whether the fence was properly secured.

As to the fifth element, there is no question Mr. Harris suffered injuries after he fell into the culvert, resulting in damages.

After our *de novo review*, we conclude Boh Bros. failed to establish lack of factual support for the elements essential to the Mr. Harris' negligence claim; thus, Boh Bros. failed to prove it was entitled to summary judgment on the ground of negligence as a matter of law.

## CONCLUSION

Our *de novo* review reveals the existence of material issues of fact precluding summary judgment. As a result, the district court's judgment granting Boh Bros.' motion for summary judgment is reversed, and the matter is remanded to the district court for further proceedings.

**REVERSED; REMANDED**